**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RONALD DOYLE; ROBERT DEUEL;
BENEDICT MILLER; and CHARLES
STEINBERG,
              *Plaintiffs-Appellants,*

              v.

CITY OF MEDFORD, an Oregon
municipal corporation; and
MICHAEL DYAL, City Manager,
City of Medford, in his official
capacity and as an individual,
              *Defendants-Appellees.*

No. 07-35753

D.C. No.
CV-06-03058-PA
District of Oregon,
Medford

ORDER
CERTIFYING A
QUESTION TO
THE SUPREME
COURT OF
OREGON

Filed May 4, 2009

Before: Susan P. Graber, Raymond C. Fisher, and
Milan D. Smith, Jr., Circuit Judges.

---

### COUNSEL

Stephen L. Brischetto, Portland, Oregon, for the plaintiffs-
appellants.

Robert E. Franz, Jr., Law Office of Robert E. Franz, Jr.,
Springfield, Oregon, for the defendants-appellees.

## ORDER

Plaintiffs, who are former employees of Defendant City of Medford, argue that the City's policy of denying health insurance coverage to retirees violates Oregon Revised Statutes section 243.303, City Resolution No. 5715, and the Due Process Clause of the United States Constitution. Plaintiffs contend that section 243.303 and Resolution No. 5715 confer on them a vested property interest in health care benefits after retirement, of which the City deprived them without due process of law. Because the question whether the statute and Resolution confer on Plaintiffs a protected property interest raises an important and unresolved issue of Oregon law that will dispose of the only remaining federal claim on appeal, we respectfully certify a question to the Supreme Court of Oregon. We offer the following statement of relevant facts and explanation of the "nature of the controversy in which the question[ ] arose." Or. Rev. Stat. § 28.210.

## BACKGROUND

A. *Factual and Procedural History*

In 1981, the Oregon State Legislative Assembly enacted Oregon Revised Statutes section 243.303(2), which read, in pertinent part:

> The governing body of any local government that contracts for or otherwise makes available health care insurance coverage for officers and employees of the local government, *may, in so far as and to the extent possible*, make that coverage available for retired officers and employees of the local government and for spouses and unmarried children under 18 years of age of those retired officers and employees. The governing body may prescribe reasonable terms and conditions of eligibility and coverage, not inconsistent with this section, for making that cover-

age available. The local government may agree to pay none, part or all of the cost of making that coverage available.

1981 Or. Laws page no. 258 (emphasis added).

In 1985, the statute was amended. The most significant change was that the legislature replaced the discretionary word "may" with the mandatory word "shall." The statute currently reads:

> The governing body of any local government that contracts for or otherwise makes available health care insurance coverage for officers and employees of the local government *shall, insofar as and to the extent possible*, make that coverage available for any retired employee of the local government who elects within 60 days after the effective date of retirement to participate in that coverage and, at the option of the retired employee, for the spouse of the retired employee and any unmarried children under 18 years of age. The health care insurance coverage shall be made available for a retired employee until the retired employee becomes eligible for federal Medicare coverage, for the spouse of a retired employee until the spouse becomes eligible for federal Medicare coverage and for a child until the child arrives at majority, and may, but need not, be made available thereafter. The governing body may prescribe reasonable terms and conditions of eligibility and coverage, not inconsistent with this section, for making the health care insurance coverage available. The local government may pay none of the cost of making that coverage available or may agree, by collective bargaining agreement or otherwise, to pay part or all of that cost.

Or. Rev. Stat. § 243.303(2) (2007) (emphasis added).

In 1986, the City adopted Resolution No. 5715, which set forth the City's plan for complying with section 243.303. The Resolution interprets section 243.303 as requiring "that continuation of health insurance be offered to employees who retire from City service." The Resolution provides that a retired employee has 60 days from the date of retirement in which to elect to continue his or her participation in the City's health insurance program. The retiree also can elect to enroll his or her spouse and unmarried children under age 18 in the program, if they were covered while the retiree was employed by the City. Under the Resolution, coverage continues until one of several events (including the retiree's attainment of Medicare eligibility or termination of the retiree program by the City or its carrier) occurs.

Before 1990, the City permitted all employees to elect to continue their health insurance coverage upon retirement. In 1990, however, the City negotiated with its police officers' union for a health insurance program that did not give officers the opportunity to continue coverage after retirement. In 2001, the City placed all of its management-level employees under that same health insurance program, which does not cover retirees. In 2002, the City placed its non-management employees in both its Parks and Recreation Department and Public Works Department in the same program.

The City contracts with the Oregon Teamsters Employers Trust to provide health insurance to its employees. The Teamsters' contract with the City states: "[P]articipants are not allowed to participate in the Trust's Retiree Plan or any insured or HMO option available through it." This provision means that retirees are excluded from coverage under the Teamsters' plan. The members of the Teamsters are responsible for voting on the extent of coverage. According to the City, the Teamsters were "willing" to provide health insurance benefits to retired employees, but only "if the members of the Teamsters voted for such coverage." To date, the mem-

bers of the Teamsters have not approved an extension of health insurance benefits to retirees.

Although the City does not provide health insurance coverage after retirement, retirees can choose to remain covered for 18 months after their retirement under the Consolidated Omnibus Budget Reconciliation Act of 1985. After that 18-month period expires, retired employees can enroll in the Oregon Public Employees Retirement System Health Insurance Program, into which the City has paid so that its retired employees can obtain coverage.

Plaintiffs are former City police officers or management-level employees who have retired and who have been denied benefits under the Teamsters' plan.[1] In August 2006, Plaintiffs filed suit against the City and City Manager Michael Dyal, alleging that Defendants had violated Resolution No. 5715 and Oregon Revised Statutes section 243.303; the Due Process Clause; the Age Discrimination in Employment Act of 1967 ("ADEA"); and the parallel Oregon age discrimination statute, Or. Rev. Stat. § 659A.030.[2] Defendants moved for summary judgment, which the district court granted.

---

[1]Defendants assert that Plaintiffs' claims are barred by Oregon's two-year statute of limitations for actions brought under 42 U.S.C. § 1983. *See Sain v. City of Bend*, 309 F.3d 1134, 1138 (9th Cir. 2002). Defendants argue that Plaintiffs' injuries occurred when the City decided to switch to a plan that did not provide coverage for retirees (1999 for police officers and 2001 for management-level employees). We think that the applicable injury dates are 60 days after each Plaintiff's individual retirement date because, by then, each Plaintiff would have applied for benefits under Resolution No. 5715 and would have been denied coverage. Under that analysis, Plaintiffs Steinberg and Deuel would be dismissed from the action because they did not bring suit within two years of their 60-day windows expiring. But Plaintiffs Miller and Doyle would remain, because the suit was filed within two years of the expiration of their 60-day windows.

[2]The ADEA claim is the subject of a separate decision, embodied in an unpublished memorandum disposition filed this date. The ADEA claim

In its order granting summary judgment, the district court held that neither section 243.303 nor Resolution No. 5715 afforded Plaintiffs a constitutionally protected property interest. Because no Oregon court had yet interpreted either the statute or the Resolution, the court examined Ninth Circuit case law and reasoned that the statute's text did not "sufficiently limit the conditions under which the City would be required to extend health insurance coverage to retirees." The court declined to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, dismissing them without prejudice and with leave to refile in state court.

Following the district court's grant of summary judgment, Plaintiffs filed their state law claims in Oregon state court. Plaintiffs alleged four claims: (1) the City violated section 243.303, which Plaintiffs argue provides a private right of action; (2) the City violated Resolution No. 5715, which Plaintiffs also argue provides a private right of action; (3) the City violated Oregon's age discrimination law; and (4) the City breached an implied contract it had made with Plaintiffs. The state trial court held in November 2008 that the claims of two of the four plaintiffs (Steinberg and Deuel) were barred on statute of limitations grounds, but that the claims of the other two plaintiffs (Doyle and Miller) could proceed.[3] The

does not affect the certified question. The Oregon age discrimination claim, along with other state law claims, is pending in Oregon state court. *See Doyle v. City of Medford*, Case No. 08-0137-L7, Circuit Court of Jackson County (complaint filed Jan. 9, 2008). A second set of plaintiffs, who are current employees of the City, filed an identical set of claims in federal court. That case was dismissed from federal court for lack of ripeness, *see Bova v. City of Medford*, No. 08-35091, slip op. at 5167 (9th Cir. May 4, 2009), but those plaintiffs are also pursuing their state claims in state court. *See Bova v. City of Medford*, Case No. 08-1663-E7, Circuit Court of Jackson County (amended complaint filed Apr. 10, 2008).

[3]*See* Opinion and Order on Defendants' Motion for Partial Summary Judgment, Case No. 08-0137-L7, Circuit Court for Jackson County (Nov. 20, 2008). *See also supra* note 2.

court held that section 243.303 afforded Plaintiffs a private right of action, but that Resolution No. 5715 did not.

The court rejected the City's argument that it was not required to allow its retired employees to continue the same coverage offered to current employees because providing such coverage is "impossible" under the City's contract with the Teamsters. The court held that Defendants cannot escape the requirements of section 243.303 by "conspicuously contracting with an insurance provider whose coverage does not include retirees." Because Defendants did not present "the Court with undisputed evidence that *no* entity providing health care insurance was (and is) willing to provide [health care] coverage for both current and retired employees of the City of Medford," the court refused to say that, as a matter of law, it was impossible for the City to provide coverage to retirees. Additionally, the court decided that the phrase "to the extent possible" does not mean "to the extent financially prudent," because the Oregon legislature did not include the words "subject to the availability of funds" in section 243.303, as it has in some other statutes. That case is still pending in state court; as of the date of this Order, no final judgment has been entered and no appeal has been taken.

B.   *Due Process Claim*

Plaintiffs argue that section 243.303 and Resolution No. 5715 create for retired City employees a property interest in health insurance benefits after retirement and that, by denying Plaintiffs such benefits, the City has deprived them of property without due process of law. Resolving that issue of federal law necessarily depends on the state courts' construction of section 243.303. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) (holding that property interests are not created by the Constitution but, "[r]ather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state

law[ ]rules or understandings that secure certain benefits and that support claims of entitlement to those benefits").

No Oregon appellate court yet has interpreted section 243.303. Despite the guidance concerning statutory interpretation provided by *Portland General Electric Co. v. Bureau of Labor & Industries*, 859 P.2d 1143 (Or. 1993), we discern no readily definitive meaning in this statute. As advised by *Portland General Electric*, we have examined the text and context of the statute, *id.* at 1146, but a significant ambiguity in the text, coupled with the absence of guidance from any Oregon appellate court, leaves us without an answer from the application of Oregon's case law.

The statutory text is ambiguous. As noted, section 243.303(2) provides that "any local government that contracts for or otherwise makes available health care insurance coverage for officers and employees of the local government shall, *insofar as and to the extent possible*, make that coverage available for any retired employee of the local government who elects within 60 days after the effective date of retirement to participate in that coverage." (Emphasis added.) The phrase "insofar as and to the extent possible"[4] could impose any one of a wide range of requirements on local governments. At one extreme, that phrase could restrain local governments' discretion tightly and mean that they must purchase insurance from a carrier that will provide coverage to retirees without regard to cost, feasibility of administration of the plan, or public opinion, as long as any insurer anywhere, at any cost, would cover retirees. At the other extreme, the phrase could grant significant discretion to local governments to reject insurance carriers who provide retiree coverage, simply because another plan exempting retirees is less expensive, gives better benefits, or is otherwise more attractive.

---

[4]Section 243.303 appears to be the only Oregon statute that contains this exact phrase. We have found no Oregon cases that interpret a similar statutory phrase in an analogous context.

The legislative history of the statute, to which we turn when the legislature's intent is not clear from the text and context of the statute, *see Portland Gen. Elec.*, 859 P.2d at 1146, does not shed much light on the proper interpretation of the phrase "insofar as and to the extent possible." When originally enacted in 1981, the statute provided that local governments "may, in so far as and to the extent possible," provide health insurance coverage to retired employees. 1981 Or. Laws page no. 258. The legislative history from 1981 demonstrates that the legislature intended to convey a significant amount of discretion to local governments to determine, using their own standards, whether retiree coverage was possible. *See* Minutes, Senate Local Government, Urban Affairs, and Housing Committee for Public Hearing Regarding HB 3010, page 4, Oregon State Legislative Assembly (June 1, 1981) (noting that several senators recognized the bill as "permissive" and that one senator "said the bill only made it clear to local governments that . . . [retiree coverage] could be negotiated if so desired"); Minutes, House Committee on Intergovernmental Affairs for Public Hearing Regarding HB 3010, pages 3-4, Oregon State Legislative Assembly (Apr. 22, 1981) (noting that the Legislative Counsel chose to use the word "may" rather than "shall" in the 1981 version "because of availability and flexibility of insurance coverage in [the] area"). But the discussion did not illuminate the meaning of the phrase that carries over to the present day—"insofar as and to the extent possible."

In 1985, despite opposition, the legislature replaced "may" with "shall." That change takes away at least some of the local government's discretion to determine whether providing retiree coverage is possible, but the 1985 legislative history does not advise us about what amount of discretion, if any, still remains in the hands of local governments. The legislative history demonstrates that some legislators were concerned about the additional costs that the mandatory wording would impose. *See, e.g.*, Minutes, House Committee on Intergovernmental Affairs for Public Hearing Regarding HB 2430,

pages 3-4, Oregon State Legislative Assembly (Mar. 5, 1985) (noting that one representative "questioned figures of estimated cost increases for premiums," another "questioned if insuring retired persons on a city's group plan increases the rates of the other insurees," and yet another "commented on the problem of insuring retired persons at the expense of cities"). Despite those concerns, the bill passed with the phrase "insofar as and to the extent possible" left intact. The legislative history does not inform us whether that phrase survived untouched in order to leave some discretion in the hands of local governments, to satisfy opponents of the bill who believed that a strict mandatory rule would be prohibitively expensive for cities, or just by oversight. Nor does the history explain what the phrase "insofar as and to the extent possible" means in this context.

Pinpointing how much discretion the operative phrase leaves to local governments is central to deciding the federal constitutional issue in this case because, in determining whether a state statute confers on a party a protected property interest, our primary inquiry is " 'the extent to which the statute contains mandatory language that restricts the discretion of the [decisionmaker].' " *Allen v. City of Beverly Hills*, 911 F.2d 367, 370 (9th Cir. 1990) (alteration in original) (quoting *Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir. 1980)). Surely, the move from discretionary to mandatory phrasing demonstrates a shift in local governments' responsibility to provide health insurance coverage for retired employees. But, without guidance from the Oregon Supreme Court about what the phrase "insofar as and to the extent possible" means in this context or how dramatic a shift in the local governments' discretion the legislature intended, we are unable to decide the federal constitutional question accurately.

If examination of the text, context, and legislative history does not demonstrate the legislature's intent, a court "may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Portland Gen. Elec.*,

859 P.2d at 1146. We are hesitant, however, to speculate about *which* general maxims of statutory construction the Oregon Supreme Court would use to interpret this statute and what result that court would reach. We do not think that it is appropriate to substitute our judgment for the judgment of the Oregon Supreme Court on the interpretation of Oregon's statutory scheme for providing health insurance coverage to retired public employees.

We recognize that the court takes into account several discretionary factors when deciding whether to accept a question for certification. *W. Helicopter Servs., Inc. v. Rogerson Aircraft Corp.*, 811 P.2d 627, 630 (Or. 1991).[5] Several of those factors weigh in favor of the court's accepting this certified question. To begin, we think that the question whether retired public employees have a vested property right to health insurance coverage after retirement under section 243.303 is one of exceptional importance to citizens of the State of Oregon and to local governments within the state, especially in light of the increasing costs of health insurance and the decreasing budgets of local governments.

We recognize that a state trial court is considering the issues presented in this order for certification, which could implicate the doctrine of "*Pullman* abstention," one of the discretionary factors discussed in *Western Helicopter*. In *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), the United States Supreme Court "held that the federal courts should abstain from deciding a case where an unsettled

---

[5]The seven criteria for exercising discretion to accept certification are: (1) the Oregon Supreme Court's independent assessment of whether there is controlling Oregon precedent; (2) whether an unsettled question of state law may be dispositive of a claim that state action violates the United States Constitution; (3) considerations of comity; (4) the importance of the certified question of law; (5) whether the issue to be decided is truly contested; (6) the procedural posture of the case; and (7) the extent to which the Oregon Supreme Court would need to exercise its discretion to restate, or reframe, the question certified. *W. Helicopter*, 811 P.2d at 631-34.

question of state law may be dispositive of a claim that state action violated the [United States Constitution], because the answer to the state law question may obviate the need to decide the federal constitutional question." *W. Helicopter*, 811 P.2d at 632; *see also Spoklie v. Montana*, 411 F.3d 1051, 1055 (9th Cir. 2005).

Here, the state courts' answer to the question of how much discretion is afforded to local governments under the statute could be dispositive of Plaintiffs' claim that the City's actions violate the United States Constitution. For example, if the state courts were to hold that the statute grants local governments unlimited discretion, then under federal law, we would be obligated to hold that there is no protected property interest and no corresponding due process violation. Or, Plaintiffs could get all the relief that they seek from the state court proceedings and, consequently, may choose to dismiss the federal action.

Therefore, we could simply abstain from deciding this case under the *Pullman* doctrine and, accordingly, wait for the parallel state court action to work its way through the state court system. However, as the Oregon Supreme Court recognized in *Western Helicopter*, certification is appropriate in *Pullman*-type abstention cases "because the alternative to certification is federal court abstention and the attendant delay until resolution of the derivative state court . . . action (including trial, the right to a direct appeal, and the right to seek discretionary review after the direct appeal)." 811 P.2d at 632; *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 75 (1997) ("Certification today covers territory once dominated by a deferral device called '*Pullman* abstention' . . . ."). In this case, it could take months, or perhaps even years, for the trial court to complete its proceedings, as there are other claims, aside from the statutory claim, that also require resolution. Even after the trial court has rendered a decision as to its interpretation of the statute, there is no guarantee that the parties will seek review of that decision. During the significant

delay, public employees, retired employees, and local governments will be in limbo, uncertain of their rights and obligations under section 243.303. *Western Helicopter* states that, "[e]xcept in unusual circumstances (examples of which do not readily come to mind), [the Oregon Supreme Court] will accept certification in *Pullman*-type abstention cases." *Id.* Because this case does not present an unusual circumstance but, instead, invokes classic *Pullman* abstention principles, we respectfully seek certification.

If we were not to abstain and instead were to interpret the statute based on our best understanding of Oregon law, the existence of parallel state and federal proceedings that address the same legal question presents the risk of inconsistent judgments as to the proper interpretation of section 243.303. If the federal and state courts adopted different readings of the statute, local governments and their employees would be uncertain about what the law requires of them with regard to retiree health insurance coverage. Such uncertainty is best resolved by a definitive decision by the Oregon Supreme Court as to the proper meaning of section 243.303.

We also note that both parties in this matter agree that certification is the best way to resolve the statutory interpretation question. Plaintiffs' sole objection to certification is that they should be allowed to conduct discovery and develop a full factual record before the case proceeds to the Oregon Supreme Court. We disagree that development of a full factual record is necessary for resolution of the purely legal issue presented in this appeal. The question as to which we seek certification is solely one of statutory interpretation and legislative intent that is completely unmoored from particular facts. We therefore believe that the procedural posture of this matter does not stand as a bar to certification.

## CONCLUSION

We respectfully certify to the Oregon Supreme Court the following question under Oregon law:

What amount of discretion does Oregon Revised Statutes section 243.303 confer on local governments to determine whether or not to provide health insurance coverage to their employees after retirement?

We respectfully ask the Oregon Supreme Court to exercise its discretionary authority under Oregon's Uniform Certification of Questions of Law Act, Or. Rev. Stat. §§ 28.200 to .255, to accept and decide this question. Our phrasing of the question should not restrict the court's consideration of the issues involved. "The court may reformulate the relevant state law questions as it perceives them to be, in light of the contentions of the parties." *Toner ex rel. Toner v. Lederle Labs.*, 779 F.2d 1429, 1433 (9th Cir. 1986). We agree to abide by the decision of the Oregon Supreme Court. *Lombardo v. Warner*, 391 F.3d 1008, 1010 (9th Cir. 2004) (en banc) (order). If the court decides that the question presented in this case is inappropriate for certification, or if it declines the certification for any other reason, it should so state and we will resolve the question according to our best understanding of Oregon law.

The Clerk will file a certified copy of our Order with the Oregon Supreme Court under Oregon Revised Statutes section 28.215. This appeal is withdrawn from submission and will be submitted following receipt of the Oregon Supreme Court's Opinion on the question certified. This panel retains jurisdiction over further proceedings in this court. The parties will notify the Clerk within one week after the Oregon Supreme Court accepts or rejects certification, and again within one week after the court renders its Opinion.

IT IS SO ORDERED.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON REUTERS/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2009 Thomson Reuters/West.