Argued and submitted February 16, 2011, reversed and remanded for entry of judgment for defendant consistent with this opinion September 12, 2012

PROVIDENCE HEALTH PLAN,
an Oregon nonprofit corporation,
*Plaintiff-Respondent,*

*v.*

Lindsey WINCHESTER,
*Defendant-Appellant.*

Yamhill County Circuit Court
CV080258; A142272

288 P3d 13

Thomas H. Anderson argued the cause for appellant. With him on the briefs was Thomas H. Anderson, P.C.

Sharon A. Rudnick argued the cause for respondent. With her on the brief were Jona J. Maukonen, Arden J. Olsen, and Harrang Long Gary Rudnick P.C.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

DUNCAN, J.

### DUNCAN, J.

In this civil case, plaintiff, Providence Health Plan (Providence) filed suit against defendant Winchester, its insured,[1] alleging that defendant is required to reimburse Providence for amounts that Providence paid for defendant's medical care after defendant was injured in a car accident while she was a pedestrian. Defendant received settlements under the driver's liability insurance policy and under her own underinsured motorist (UIM) policy, and Providence asserts that, under its policy with defendant, defendant must reimburse it from those settlements for the money that it spent on medical care for her injuries arising from the accident. Both parties moved for summary judgment, and the trial court granted summary judgment in favor of Providence. Defendant appeals the resulting judgment, arguing that the trial court erred in entering summary judgment for Providence and in denying summary judgment for her. For the reasons explained below, we agree and, therefore, reverse.[2]

## I. FACTS AND PROCEDURAL HISTORY

The relevant facts are not in dispute. On September 26, 2006, defendant was struck by a motor vehicle while she was a pedestrian. Defendant sustained extensive injuries to her head and leg. In a declaration submitted with her motion for summary judgment, defendant asserted that her injures caused her to incur a total of $116,219.73 in medical expenses and $422,000.00 in other economic damages. Pursuant to its policy with defendant, Providence paid $86,417.25 in medical expenses on defendant's behalf.

---

[1] Plaintiff Providence Health Plan is a health care service contractor under ORS 750.005(4). Thus, technically, Providence is a plan to which defendant subscribes, not an insurer that insures defendant. *See* ORS 750.005(4)(a). Nevertheless, for purposes of the statutes at issue in this opinion, Providence is deemed an insurer. ORS 750.055(1)(e), (2). Thus, for ease of understanding, we refer to defendant Winchester as Providence's insured, to benefits furnished by Providence as health insurance benefits, and to the plan as an insurance policy.

[2] Defendant also asserts that the trial court should have awarded her attorney fees pursuant to ORS 742.061. We do not address that assignment because, as a result of its conclusion that Providence was entitled to summary judgment, the trial court did not consider defendant's argument regarding attorney fees. We leave that issue for the trial court's consideration in the first instance.

The driver of the vehicle that struck defendant had an auto liability insurance policy with State Farm with a policy limit of $25,000. Defendant had an auto insurance policy, also with State Farm, that provided $15,000 in personal injury protection (PIP) and $100,000 in UIM coverage.

In December 2006, Providence sent a letter to defendant indicating that, pursuant to the "Third Party Liability/Subrogation" provision of the policy, defendant should hold any recovery that she received from State Farm in trust for Providence. It enclosed a copy of its Subrogation Trust Agreement for that purpose. Defendant did not complete and return the Subrogation Trust Agreement, and she continued to negotiate with State Farm about payment under the driver's liability policy and her own PIP and UIM policies.

As relevant here, the employer group contract that, according to Providence,[3] represents the terms of defendant's policy provides:

"**8.1   THIRD-PARTY LIABILITY/SUBROGATION**

"* * * * *

"**8.1.2   Proceeds of Settlement or Recovery**

"To the fullest extent permitted by law, *We* [(Providence)] are entitled to the proceeds of any settlement or any judgment that results in a recovery from a third party, whether or not responsibility is accepted or denied by the third-party for the condition. *We* are entitled up to the full value of the benefits provided by *Us* for the condition, calculated using *Our* providers' usual charges for such *Services*, less the *Member's* out of pocket expenses. Prior to accepting any settlement of *Your* claim against the third party, *You* must notify *Us* in writing of any terms or conditions offered in settlement and shall notify the third party of *Our* interest in the settlement established by this provision.

"*You* must cooperate fully with *Us* in recovering amounts paid by *Providence Health Plan*. If *You* seek damages against the third party for the condition and retain an

[3] One of defendant's alternative arguments is that the terms of the policy are those set out in a member handbook that she received rather than those presented in the employer group contract, which she did not receive. Our disposition of defendant's other arguments obviates the need to discuss that issue.

attorney or other agent for representation in the matter, *You* must agree to require *Your* attorney or agent to reimburse *Providence Health Plan* directly from the settlement or recovery an amount equal to the total amount of benefits paid.

"*You* must execute the agreement by signing, and returning to *Us, Our* Subrogation Trust Agreement by which *You* and/or *Your* attorney or agent agrees to reimburse *Us* directly from the funds of the settlement or recovery. *We* will withhold benefits for *Your* condition until a signed copy of this agreement is delivered to *Us*. The agreement must remain in effect and *We* will withhold payment of benefits if, at any time, *Your* authorization or the agreement should be revoked. While this document is not necessary for *Us* to exercise *Our* rights to subrogation, it does serve as a good reminder and documents an understanding of *Our* rights to the parties involved.

"To the maximum extent permitted by law, *We* are subrogated to *Your* rights against any third party who is responsible for the condition, have the right to sue any such third party in *Your* name, and have a security interest in and lien upon any recovery to the extent of the amount of benefits paid by *Us* and for *Our* expenses in obtaining a recovery.

**"8.1.3   Suspension Of Benefits And Reimbursement**

"* * * * *

"*We* are entitled to reimbursement from any settlement or recovery from any third party even if the total amount of such settlement or recovery does not fully compensate *You* for other damages, particularly including lost wages or pain and suffering; any settlement arising out of an injury or illness covered by this *Plan* will be deemed first to compensate *You* for *Your* medical expenses, regardless of any allocation of proceeds in any settlement document that *We* have not approved in advance. In no event shall the amount reimbursed to *Providence Health Plan* be less than the maximum permitted by law."

(Italics, boldface, and underscoring in original.)

In early 2008, defendant reached a tentative settlement with State Farm for the policy limits of her policy and the driver's policy. Under the agreement, defendant would recover the $25,000 from the driver's policy, $75,000

from her UIM (her $100,000 limit minus her recovery from the driver's policy), and the $15,000 limit from her PIP policy, for a total of $115,000. After defendant reached that agreement with State Farm, her attorney sent a letter to Providence, informing it of the proposed settlement and requesting Providence to clarify its position regarding reimbursement. Providence replied that it intended to "[follow] our contractual rights of third party liability/subrogation as documented in our group service agreement."

After receiving Providence's letter, defendant settled with State Farm on the terms described above. Providence then filed this action, seeking a declaration that defendant "is obliged under the [policy] to repay Providence both out of the liability and underinsured portions of any settlement she has received" and damages for breach of contract in the amount that Providence paid toward defendant's medical expenses minus a *pro rata* share of defendant's legal expenses. Defendant counterclaimed, seeking declarations that, among other things, Providence was not entitled to recover under the contract and that ORS 742.538 controlled Providence's right to reimbursement. The declarations that defendant requested mirrored her legal arguments, which are discussed in detail below. The parties filed cross-motions for summary judgment, and the trial court granted Providence's motion and denied defendant's.

## II. ARGUMENTS AND ANALYSIS

Defendant appeals, assigning error to the trial court's denial of her motion for summary judgment and its grant of Providence's motion for summary judgment. Defendant argues, as she did before the trial court, that three statutory provisions, ORS 742.534, ORS 742.536, and ORS 742.538, provide methods for insurers to seek reimbursement of their expenditures and that those provisions preempt any language in defendant's policy with Providence that purports to give Providence another method of recovery. Furthermore, defendant contends, Providence did not seek reimbursement under the first two of those provisions—ORS 742.534 and ORS 742.536—and, accordingly, it may obtain reimbursement in this action, if at all, only through the third, ORS 742.538. As to ORS

742.538, defendant asserts that Providence has not met two of that statute's prerequisites to reimbursement.[4]

Providence responds that it can obtain reimbursement under the terms of the contract because the contract provides a remedy that is additional to, but not inconsistent with, the one provided in ORS 742.538. But, Providence contends, even if its remedies are limited by ORS 742.538, this action meets the statute's prerequisites.

As explained below, we conclude that the policy provision under which Providence seeks reimbursement in this case is superseded by ORS 742.538 to the extent that it differs from that statute. The contract section under which Providence seeks to recover from defendant is entitled "Third Party Liability/Subrogation," and, in its correspondence with defendant, Providence asserted that it intended to achieve reimbursement through "Third Party Liability/Subrogation" and sought to have defendant sign a document entitled "Subrogation Trust Agreement." ORS 742.538 contains the procedural requirements that a PIP or health insurer must meet in order to assert any right "relating to subrogation." As a result, Providence can obtain reimbursement under the "Third Party Liability/ Subrogation" provision in its policy only after satisfying the requirements of ORS 742.538.

Here, Providence failed to satisfy at least one prerequisite to reimbursement under ORS 742.538. An insurer may not obtain reimbursement through ORS 742.538 unless "the interinsurer reimbursement benefit of ORS 742.534 is not available under the terms of that section." ORS 742.538. We conclude that interinsurer reimbursement under ORS 742.534 was available to Providence when it asserted its right to subrogation. As a result, Providence is not entitled to reimbursement.

---

[4] Defendant also argues, alternatively, that, even if ORS 742.538 permits Providence to recover the proceeds of her settlement of the driver's policy, it does not permit recovery of the proceeds of the settlement under her own UIM policy. Because we conclude that the prerequisites to reimbursement under ORS 742.538 are not met, and that conclusion applies equally to both policies, we do not address that question.

A.  *PIP and Health Insurance Reimbursement Scheme*

As explained immediately above, this case presents two questions of statutory interpretation: First, may Providence obtain reimbursement from defendant based on language in its policy alone, or does ORS 742.538 require compliance with the prerequisites of that section? And, second, is ORS 742.534 "not available" to Providence as required by ORS 742.538?

When interpreting a statute, our task is to discern the intent of the legislature. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). To do so, we first consider the text of a statute in context, as well as the legislative history of the statute insofar as it is useful. *Gaines*, 346 Or at 171-72. "[O]nce the meaning and application of a statute have been put before us, we have an obligation to correctly construe and apply that statute." *Wilson v. Tri-Met*, 234 Or App 615, 624, 228 P3d 1225, *rev den*, 348 Or 669 (2010); *see also Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) ("In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties.").

The basic premise underlying PIP and, in this context, health insurance, is that, when an insured is injured in an accident involving an automobile, the insured's PIP and health insurance are immediately available to cover medical expenses, regardless of fault. *Perez v. State Farm Mutual Ins. Co.*, 289 Or 295, 300, 613 P2d 32 (1980) ("The obvious purpose of [the PIP scheme] is to provide, promptly and without regard to fault, reimbursement for some out-of-pocket losses resulting from motor vehicle accidents."). However, the legislature originally determined that the party at fault for the accident—or that party's insurance company—should ultimately shoulder those expenses.[5]

_____

[5] In 1993, the legislature modified that policy judgment with respect to PIP benefits, but not with respect to health insurance benefits. Or Laws 1993, ch 709, § 9 (enacting ORS 742.544). Under ORS 742.544, a PIP insurer cannot be reimbursed if the total recovery available to its injured insured is less than the insured's economic damages. However, because ORS 742.544 does not include health insurers, their reimbursement claims take precedence over their injured insureds' recovery of their economic damages. ORS 742.544; *see also* Joel DeVore,

Accordingly, in 1971 the legislature enacted a statutory scheme providing for reimbursement of a PIP insurer or health insurer by the insurer of the at-fault party. Amendments to the scheme in 1975 established "three mutually exclusive methods by which [a PIP or health] insurer may obtain reimbursement," which remain in place today and are set out in ORS 742.534, ORS 742.536, and ORS 742.538. *State Farm Mut. Auto. Ins. v. Sommerholder*, 65 Or App 449, 452, 671 P2d 1194 (1983), *rev den*, 296 Or 351 (1984).

We begin by summarizing the basic features of all three provisions as relevant to this dispute. The first route to reimbursement, ORS 742.534, provides that a PIP or health insurer who has paid benefits to its insured may recover those benefits directly from an "authorized" insurer "whose insured is or would be held legally liable for damages" for injuries arising from the accident. ORS 742.534(1). Any dispute between the insurers regarding liability or amount of reimbursement is resolved by interinsurer arbitration. ORS 742.534(3). The prerequisites to using ORS 742.534 are simple: The PIP or health insurer must (1) request reimbursement from the other insurer, (2) not have elected reimbursement from its insured under ORS 742.536 (discussed below), and (3) be "entitled to reimbursement under this section by the terms of its policy." ORS 742.534(1). The other insurer may not be required to make payments that exceed the limits of its policy. *Id.* Thus, the first method provides for reimbursement between insurance companies without any direct involvement on the part of the injured insured.

The second route to reimbursement, ORS 742.536, requires an insured who has received PIP or health benefits to notify his or her PIP or health insurer when the insured

---

*An Insurance Repair Act? Why Oregon Insurance Law Needs Repair*, 57 Or St B Bull 17, 18 (1997) ("Under ORS 742.544, an injured person is guaranteed a right to keep insurance money from various sources to pay her economic damages first. Any reimbursement to the PIP insurer of past PIP benefits occurs only to the extent that total insurance exceeds economic damages. The Legislature forgot, however, to make health insurers subject to the same calculation limitation as PIP insurers, although both insurers are payors of medical bills and although the reimbursement fights of health and PIP insurers arise under the same statutes. As a result, an injured person's economic damage recoveries are not consistently protected.").

"makes claim, or institutes legal action, for damages for such injuries against any person." ORS 742.536(1). Then, the insurer may elect reimbursement "out of any recovery under such claim or legal action" and has "a lien against such cause of action" for the amount it has paid out less its share of the insured's cost of recovery (costs, expenses, and attorney fees). ORS 742.536(3)(a). In order to avail itself of reimbursement under ORS 742.536, the insurer must (1) not have been a party to "an interinsurer reimbursement proceeding" under ORS 742.534, (2) be "entitled by the terms of its policy to the benefit" of ORS 742.536, and (3) provide written notice of its election to seek reimbursement through ORS 742.536 to the claimant and the person against whom the claim is made within 30 days of "the receipt of notice or knowledge of such claim or legal action." ORS 742.536(2). Thus, ORS 742.536 permits a PIP or health insurer to be reimbursed out of a recovery by its insured from another person, provided that it promptly notifies its insured and the other party of its election.

The third route to reimbursement, ORS 742.538, permits reimbursement in two ways. First, ORS 742.538(1) provides that, up to the amount of benefits that it has paid less its share of the cost of recovery (costs, expenses, and attorney fees), a PIP or health insurer "is entitled to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of the injured person against any person legally responsible for the accident." Second, ORS 742.538(4) provides that an insurer may compel its insured to "take * * * such action as may be necessary or appropriate to recover such benefits furnished as damages from such responsible person."

In order for a PIP or health insurer to obtain reimbursement through ORS 742.538, three requirements must be satisfied: (1) "the interinsurer reimbursement benefit of ORS 742.534 [must] not [be] available under the terms of that section," (2) the insurer must not have elected "recovery by lien as provided in ORS 742.536," and (3) the insurer must be "entitled by the terms of its policy to the benefit" of the section. ORS 742.538.

## B. *Analysis*

### 1. *Statutory Requirements and Contractual Rights*

We turn to the parties' arguments. As explained above, defendant argues that ORS 742.534 to 742.538 govern reimbursement, and that those provisions "preempt any provisions in a health insurance policy that are inconsistent with the statute" for two reasons: First, defendant relies on ORS 742.538(7), arguing that it prohibits Providence from bringing a claim related to subrogation under terms different from those stated in ORS 742.538. Defendant also asserts that ORS 742.021 applies to Providence and requires that "insurance policies must contain such standard or uniform provisions as are required by the Oregon Insurance Code. An insurer may not bring a nonstatutory breach of contract claim that conflicts with the [i]nsurance [c]ode."[6] *See Mid-Century Ins. Co. v. Turner*, 219 Or App 44, 58-59, 182 P3d 885 (2008) (holding that language in a PIP policy that purported to entitle the insurer to full reimbursement without compliance with the requirements of ORS 742.354 to 742.358 would be unenforceable under ORS 742.021(1) because it would be "less favorable to insureds than the form provisions").

In response to defendant's first argument, Providence contends that its contractual right to reimbursement "is entirely consistent with" ORS 742.538 and, as a result, is not preempted under ORS 742.538(7). As to defendant's second argument, Providence asserts that, unlike insurance policies, the plans of health care service contractors like Providence are permitted to include provisions less favorable to plan subscribers than the standard provisions of the insurance code. That is so, it argues, because, under ORS 750.055(1)(e), only specified provisions of ORS chapter 742

---

[6] ORS 742.021(1) provides:

"Insurance policies shall contain such standard or uniform provisions as are required by the applicable provisions of the Insurance Code. However, the insurer may at its option substitute for one or more of such provisions corresponding provisions of different wording approved by the Director of the Department of Consumer and Business Services which are in each instance *not less favorable in any respect to the insured or the beneficiary.*"

(Emphasis added.)

apply to health care services contractors, and ORS 742.021 is not specified.

We do not address whether, as Providence asserts, its contracts need not comport with the standard terms of the insurance code, like ORS 742.534 to 742.538, that apply to it through ORS 750.055(1)(e). That is so because we agree with defendant's first argument—namely, that ORS 742.538(7) prevents Providence from seeking reimbursement through a provision of its contract relating to subrogation unless the prerequisites of ORS 742.538 are satisfied.

ORS 742.583(7) provides that "[a]ny provisions in a * * * health insurance policy giving rights to the insurer relating to subrogation or the subject matter of this section shall be construed and applied in accordance with the provisions of this section." Providence does not dispute that, in this case, it seeks to enforce a provision of its health insurance policy that gives it a right "relating to subrogation." *See State Farm Mutual Automobile Ins. Co. v. Hale*, 215 Or App 19, 23, 168 P3d 285 (2007) (adopting the parties' characterization of a PIP insurer's claim, under ORS 742.538, for reimbursement from settlement proceeds received by its insured as a subrogation claim). It argues, however, that ORS 742.538(7) does not limit its ability to obtain reimbursement under the policy because the policy's remedies are not "inconsistent with ORS 742.538"; instead, they are "additional consistent * * * terms."

Under ORS 742.538(7), we construe and apply the policy "in accordance with the provisions of" ORS 742.538. Under that construction, Providence cannot escape the prerequisites to reimbursement under the statute by relying on language in the policy. *Cf. Gaucin v. Farmers Ins. Co.*, 209 Or App 99, 105, 146 P3d 370 (2006) (rejecting the PIP insurer's argument that it was entitled to reimbursement through a statute other than ORS 742.534 to 742.538 because, if that were true, "by simply invoking [that statute], a PIP insurer would escape the notice or procedural requirements of the other authorizing statutes"). Insofar as the terms of the policy omit the procedural requirements of the statute, ORS 742.538 supersedes the policy.

## 2. *Prerequisites to Reimbursement Under ORS 742.538*

Thus, in order to obtain reimbursement under the "Third Party Liability/Subrogation" provision of the policy, Providence must comply with the procedural requirements of ORS 742.538. As mentioned, those requirements are as follows:

"[(1) T]he interinsurer reimbursement benefit of ORS 742.534 is not available under the terms of that section, [(2)] the insurer has not elected recovery by lien as provided in ORS 742.536, and [(3) the insurer] is entitled by the terms of its policy to the benefit of this section[.]"

ORS 742.538. The parties agree that, here, the second requirement is met, but they disagree about whether the first and third requirements are satisfied. We consider the first requirement and conclude that ORS 742.534 was "available" to Providence "under the terms of that section." ORS 742.538. Consequently, we do not consider whether Providence is "entitled by the terms of its policy to the benefit" of ORS 742.538.

ORS 742.534 provides:

"(1) Except as provided in ORS 742.544, every authorized motor vehicle liability insurer whose insured is or would be held legally liable for damages for injuries sustained in a motor vehicle accident by a person for whom personal injury protection benefits have been furnished by another such insurer, or for whom benefits have been furnished by an authorized health insurer, shall reimburse such other insurer for the benefits it has so furnished if it has requested such reimbursement, has not given notice as provided in ORS 742.536 that it elects recovery by lien in accordance with that section and is entitled to reimbursement under this section by the terms of its policy. Reimbursement under this subsection, together with the amount paid to injured persons by the liability insurer, shall not exceed the limits of the policy issued by the insurer.

"(2) In calculating such reimbursement, the amount of benefits so furnished shall be diminished in proportion to the amount of negligence attributable to the person for whom

benefits have been so furnished, and the reimbursement shall not exceed the amount of damages legally recoverable by the person.

"(3) Disputes between insurers as to such issues of liability and the amount of reimbursement required by this section shall be decided by arbitration.

"(4) Findings and awards made in such an arbitration proceeding are not admissible in any action at law or suit in equity.

"(5) If an insurer does not request reimbursement under this section for recovery of personal injury protection payments, then the insurer may only recover personal injury protection payments under the provisions of ORS 742.536 or 742.538."

Relying on the last sentence of ORS 742.534(1), Providence argues that ORS 742.534 was not available to it "because State Farm had paid its policy limits and could not be required to pay any more."

We have addressed, and rejected, the same argument under similar circumstances. In *Hale*, 215 Or App 19, State Farm brought an action against its insured for PIP reimbursement pursuant to ORS 742.538. The defendant insured had been injured in an automobile accident caused by Knotts. Knotts was insured by Farmers Insurance. *Id.* at 21. State Farm paid PIP benefits to the defendant and then demanded reimbursement directly from Farmers pursuant to ORS 742.534. Farmers tendered a check for Knotts's policy limit to the defendant to settle his claims against Farmers "separate from the PIP obligations." *Id.* at 22 (internal quotation marks omitted). After the defendant received the check, State Farm withdrew its request for arbitration with Farmers.

Then State Farm informed the defendant that it would only approve the settlement on the condition that the defendant reimburse State Farm from the settlement proceeds. *Id.* at 23. The defendant asserted that that was not a legitimate basis on which to disapprove the settlement, and, eventually, State Farm filed suit, arguing that it was entitled to subrogation pursuant to ORS 742.538.

The defendant asserted that State Farm was not entitled to subrogation because interinsurer reimbursement "was *** available" under ORS 742.534. ORS 742.538. State Farm contended that interinsurer reimbursement had ceased to be available when Farmers had offered the defendant a settlement for the limits of Knotts's policy, because, under ORS 742.534, Farmers could not be required to pay more than those limits. According to State Farm, when Farmers offered the defendant a settlement for the policy limits, ORS 742.534 was rendered unavailable in the sense that State Farm was no longer able to recover anything through interinsurer reimbursement. The trial court agreed with State Farm. *Hale*, 215 Or App at 23.

The defendant appealed, and we reversed. We explained that reimbursement under ORS 742.538 "is meant to be available to a PIP insurer only when that insurer has no option to proceed under the interinsurer reimbursement process described in ORS 742.534 and has not asserted a lien pursuant to ORS 742.536." *Id.* at 26. Consequently, State Farm "did not properly assert its subrogation rights under ORS 742.538, because at the time it attempted to do so, no settlement had occurred, and, thus, interinsurer reimbursement remained 'available' pursuant to ORS 742.534, rendering subrogation under ORS 742.538 unavailable." *Id.* at 24. That is, we evaluated the availability of ORS 742.534 at the time when State Farm first asserted its right to subrogation under ORS 742.538—which was before the settlement was finalized. At that time, Farmers had not yet paid Knotts's policy limit. Consequently, interinsurer reimbursement was available.[7]

Here, Providence argues—as the PIP insurer did in *Hale*—that interinsurer reimbursement was not available because, having paid its policy limits to defendant, "State Farm could not be required to pay any more pursuant to the terms of ORS 742.534." Providence first asserted its right to "third-party liability/subrogation"—which, as explained

---

[7] Our conclusion that ORS 742.534 was available when State Farm asserted its rights under ORS 742.538 was determinative. Consequently, in *Hale*, we did not reach the defendant's broader argument that ORS 742.534 remains available after the payor insurance company has paid its policy limits. 215 Or App at 24.

above, is only cognizable through ORS 742.538—in December 2006, more than a year before defendant settled with State Farm for the policy limits. Thus, as in *Hale*, here, Providence "did not properly assert its subrogation rights under ORS 742.538, because at the time it attempted to do so, no settlement had occurred, and, thus, interinsurer reimbursement remained 'available' pursuant to ORS 742.534." 215 Or App at 24.

In summary, in order to obtain reimbursement through the "Third-Party Liability/Subrogation" provision of the policy, Providence had to comply with the requirements of ORS 742.538. A prerequisite to reimbursement under that statute is that "the interinsurer reimbursement benefit of ORS 742.534 *** not [be] available." When Providence asserted its right to reimbursement through the "Third-Party Liability/Subrogation" provision, however, interinsurer reimbursement through ORS 742.534 was available. Consequently, Providence is not entitled to reimbursement.

Reversed and remanded for entry of judgment for defendant consistent with this opinion.