**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| CYNTHIA RAYNOR,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>UNITED OF OMAHA LIFE INSURANCE<br>COMPANY, a Nebraska corporation,<br>*Defendant-Appellee.* | No. 14-36090<br><br>D.C. No.<br>3:14-cv-05252-<br>RBL<br><br><br>ORDER |

Filed June 6, 2017

Before: Alex Kozinski and William A. Fletcher, Circuit Judges, and John R. Tunheim,[*] Chief District Judge.

ORDER CERTIFYING QUESTIONS
TO THE SUPREME COURT OF
OREGON

---

[*] The Honorable John R. Tunheim, Chief United States District Judge for the District of Minnesota, sitting by designation.

## SUMMARY[**]

**Certification to Supreme Court of Oregon**

The panel certified the following questions of state law to the Oregon Supreme Court:

> 1.   If the Director of the Department of Consumer and Business Services approves a contractual limitations provision in an insurance policy under Oregon Revised Statutes § 742.021, does the language of the policy always control or do the standard provisions of the Oregon Insurance Code apply if the standard provisions are more favorable than the approved insurance policy provision?
>
> 2.  If the Oregon standard provisions do apply, when does "the period for which the insurer was liable" under Oregon Revised Statutes § 743.429 end?

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**ORDER**

Oregon law requires insurance policies to conform with the standard provisions of the Oregon Insurance Code. Or. Rev. Stat. § 742.021. Under the standard provisions, insureds who suffer from continuing loss have three years and ninety days "after the termination of the period for which the insurer is liable" to file suit. Or. Rev. Stat. §§ 743.429, .441. Oregon law permits insurers to issue policies with alternatively worded provisions, but only when those alternatively worded provisions are approved by the Director of the Department of Consumer and Business Services. Or. Rev. Stat. § 742.021. Those policies must be "in each instance not less favorable in any respect to the insured or the beneficiary." *Id.*

In the present case, we are asked to apply an insurance policy that may not conform with the standard limitations period required under Oregon law. The insurer contends that the policy terms must control because the policy has been approved by the Director of the Department of Consumer and Business Services. If the policy terms control, the claims of Plaintiff, the insured, are time-barred. But if we are permitted to apply the State's standard provisions despite the Director's approval of the policy, Plaintiff's suit may go forward if 1) we determine that the standard limitation provision is more favorable than the corresponding provision in her policy, and 2) we determine under the standard provisions that her claim is not time-barred. To determine whether Plaintiff's claim is time-barred under the standard provisions, we must interpret the phrase, "period for which the insurer is liable." Neither the meaning of this phrase, nor a court's authority to apply standard provisions to a Director-approved policy, has been directly addressed by Oregon courts.

The timeliness of Plaintiff's suit therefore depends on two important and unresolved issues of Oregon law that are dispositive in this case. We respectfully certify both questions to the Oregon Supreme Court so that we, as well as the Oregon bar, might benefit from an authoritative decision on these issues. We offer first "[a] statement of all facts relevant to the questions certified," before turning to "[t]he questions of law to be answered." Or. Rev. Stat. §§ 28.210(1), (2).

## BACKGROUND

### I. Factual and Procedural History

From December 2002 to March 2008, Cynthia Raynor worked as a real estate agent for RE/MAX in Washington State. RE/MAX held, on Raynor's behalf, a long-term disability ("LTD") policy ("Policy") offered by United of Omaha Life Insurance Company ("Omaha"). The Policy was issued in Oregon and is subject to Oregon law. On March 5, 2008, Raynor left RE/MAX for medical reasons. She then submitted to Omaha a claim for LTD benefits, which Omaha granted in June.

For the next twenty months, Raynor received monthly disability payments without incident or complaint. However, on February 23, 2010, Omaha mailed Raynor a letter informing her that it was reviewing her eligibility for benefits under a new definition of disability. While Raynor's eligibility for initial benefits depended only on whether she could not perform "at least one of the Material Duties of [her] Regular Occupation," her continued eligibility for benefits after two years depended on whether she was "unable to perform all of the Material Duties of any Gainful

Occupation." On December 6, 2010, Omaha mailed Raynor a letter stating that because she did not meet the "any Gainful Occupation" standard, it would be discontinuing her benefits. Raynor appealed internally on October 12, 2011. On May 3, 2012, Omaha upheld the denial of Raynor's claim. On March 26, 2014, Raynor filed suit against Omaha, alleging wrongful termination of her LTD benefits.

The Policy contains a contractual limitation period of three years from "the date written proof of loss is required." The Policy does not define "proof of loss." However, in a section entitled "Proof of Loss Requirements," the Policy specifies that a claim form must be mailed "within 90 days after the end of [the claimant's] Elimination Period; or as soon as reasonably possible." That section further states that if a claimant cannot meet the ninety-day deadline, she must provide the claim form no later than a year after the time proof of loss is required.

The parties filed cross-motions for summary judgment on the question whether the Policy's three-year contractual limitation period barred Raynor's suit. On December 17, 2014, the United States District Court for the Western District of Washington awarded summary judgment to Omaha. The court examined the terms of the Policy and concluded that written proof of loss was required by May 3, 2010, the deadline for Raynor to submit forms and medical records in connection with her claim for continuing loss under the "any Gainful Occupation" standard. Because Raynor did not bring suit within three years of that date, the district court deemed her suit untimely.

The district court also considered Raynor's argument that Oregon's standard insurance provisions saved her suit from

being time-barred.  Raynor argued in the district court that because language in § 743.429 was more favorable to the insured than corresponding language in the Policy, the standard provisions of the state code should be read into the Policy.  Section 743.429 stipulates that "[w]ritten proof of loss must be furnished to the insurer at its office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within 90 days after the termination of the period for which the insurer is liable." The district court was unconvinced, noting that Oregon's Director of the Department of Consumer and Business Services had already approved the Policy without the model language.  The district court then reasoned that even if § 743.429 governed, the "period for which [Omaha] was liable" expired on June 3, 2010, the end of Raynor's two-year benefits period under the "Your Regular Occupation" definition of disability.  This appeal followed.

## II.  Discussion

### A.  Oregon Revised Statutes § 742.021

Oregon law requires that "[i]nsurance policies . . . contain such standard or uniform provisions as are required by the applicable provisions of the Insurance Code."  Or. Rev. Stat. § 742.021.   When an insurance policy "contains any condition, omission or provision not in compliance with the Insurance Code," the policy "shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy been in full compliance with the Insurance Code."  Or. Rev. Stat. § 742.038.  It is undisputed that the Policy does not contain a precise equivalent to § 743.429.

Omaha seeks shelter under an exception to the aforementioned rule:

> [T]he insurer may at its option substitute for one or more of such [standard or uniform] provisions corresponding provisions of different wording approved by the Director of the Department of Consumer and Business Services which are in each instance not less favorable in any respect to the insured or the beneficiary.

Or. Rev. Stat. § 742.021. Omaha provides an affidavit from its Manager for Product and Filing Compliance, Sandy Rampling, who asserts that the Omaha Master Policy form and Omaha Certificate of Insurance form were approved by the State of Oregon in 2001 and 2005, respectively. Omaha contends that § 742.021 delegates to state administrative authorities the conclusive power to decide whether a proposed policy is "not less favorable . . . to the insured." On this view, once an insurance policy attains approval by the Director of the Department of Consumer and Business Services, policy terms may not be challenged as less favorable to the insured than the standard provisions of the Oregon Insurance Code.

Omaha's interpretation is not the only possible interpretation of § 742.021. On its face, § 742.021 appears to require satisfaction of two independent conditions before standard provisions can apply. First, the Director of the Department of Consumer and Business Services must approve the proposed language. Second, that language must not be in any way less favorable to the insured. The statute is silent as to whether only state officials can make a

favorability determination, or whether competent courts may make that determination, even after the approval of such language by the Director of the Department of Consumer and Business Services.

The Oregon Supreme Court has not yet had occasion to address this question. Although the Oregon Court of Appeals decided two cases where parties raised § 742.021 arguments, neither case discussed approval by the Department of Consumer and Business Services or the powers of a reviewing court. In *Providence Health Plan v. Winchester*, 252 Or. App. 283, 288 P.3d 13 (2012), the insured invoked § 742.021 to argue that the insurer could not apply policy terms less favorable than the standard provisions. The Oregon Court of Appeals resolved the matter on an alternative ground, declining to "address whether, as Providence asserts, its contracts need not comport with the standard terms of the insurance code." *Id.* at 19. The court came closer to answering our question in *Mid-Century Insurance Co. v. Turner*, 219 Or. App. 44, 182 P.3d 855 (2008). In that case, the Oregon Court of Appeals explicitly relied on § 742.021, but only to reject the insurance company's interpretation of its own policy language. *Id.* at 857, 860–65 (reasoning that "if given the effect [that the company] urges, certain provisions of the policy . . . are unenforceable in that they are 'less favorable' to the insured than operative provisions of the Oregon Insurance Code"). In so holding, the court asserted its power to invoke § 742.021 to avoid a construction of policy language that would conflict with the Oregon Insurance Code. But the court did not address whether it could read Oregon's standard provisions into a Director-approved policy if the court independently determines those provisions to be more favorable than corresponding policy terms.

The Oregon legislature has instructed courts to liberally construe the Insurance Code, which "is for the protection of the insurance-buying public," in favor of insureds.  Or. Rev. Stat. §§ 731.008, .016.  Because this issue involves a specific matter of statutory interpretation, implicating not just questions of intent and meaning but also relative institutional competencies and competing values of efficiency and accountability, we "are hesitant . . . to speculate" as to how the Oregon Supreme Court would answer the questions before us.  *Doyle v. City of Medford*, 565 F.3d 536, 542 (9th Cir. 2009).  An authoritative ruling will save parties from needless litigation and ensure that both insurers and insureds are on clearer notice of their rights and obligations.

## B.  Oregon Revised Statutes § 742.038

If the Oregon Insurance Code's limitations period governs a Director-approved policy that contains a less favorable limitations term despite the approval of the Director, we must next ask whether the Policy is less favorable to the insured than the standard provisions.  In one respect, the Policy does comply with the Insurance Code.  Both the Policy and the Insurance Code contain a three-year limitations period that runs from the date written proof of loss is required.  But if the Policy and the Insurance Code define "date written proof of loss is required" in different ways, the starting point for the limitations period will differ markedly between the two.

Raynor's policy does not explicitly set a date by which written proof of loss is required.  The section governing an initial claim of benefits requires that the form containing written proof of loss be mailed "within 90 days after the end of [the claimant's] Elimination Period; or as soon as reasonably possible."  There is no corresponding "proof of

loss" section for when an applicant applies for continuing coverage after receiving two years of monthly payments.

Section 743.429 stipulates that "written proof of loss must be furnished to the insurer at its office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within 90 days after the termination of the period for which the insurer is liable . . . ." Read together with the three-year limitation period under § 743.441, § 743.429 contemplates that beneficiaries like Raynor should have three years plus ninety days after "the termination of the period for which the insurer is liable" to file suit.

No Oregon appellate court has defined the phrase "period for which the insurer is liable." Under one reading, which has been adopted by the majority of courts that have considered the question, the phrase refers to the full period during which the claimant is actually disabled. *See Oglesby v. Penn Mut. Life Ins. Co.*, 877 F. Supp. 872, 886 (D. Del. 1994) (cataloging cases and secondary sources to conclude that the "general weight of authority on this issue" is that "disability insurance claimant need not submit proof of loss until the termination of the period in which the insured was disabled"). Under this reading of § 743.429, the question whether Raynor's lawsuit is time-barred depends entirely on the fact of her continued disability—a disputed question of material fact that the district court was not entitled to resolve at summary judgment. Other courts have at times interpreted the phrase differently. *See id*. (cataloging several contrary cases). Responding to the concern that the majority rule would encourage a claimant to sleep on her rights, one court has said that the "insured is not likely to wait years before filing proof of loss because he will want to receive benefits as

soon as possible." *Laidlaw v. Commercial Ins. Co. of Newark*, 255 N.W.2d 807, 812 (Minn. 1977).  While we could predict how the Oregon Supreme Court would rule, it would be only a prediction.  An answer from the Oregon Supreme Court would provide both insurers and insureds a clear and authoritative rule as to when the Insurance Code's limitations period expires.

## CONCLUSION

We respectfully certify to the Oregon Supreme Court the following questions of Oregon law:

1.  If the Director of the Department of Consumer and Business Services approves a contractual limitations provision in an insurance policy under Oregon Revised Statutes § 742.021, does the language of the policy always control or do the standard provisions of the Oregon Insurance Code apply if the standard provisions are more favorable than the approved insurance policy provision?

2. If the Oregon standard provisions do apply, when does "the period for which the insurer was liable" under Oregon Revised Statutes § 743.429 end?

We respectfully ask the Oregon Supreme Court to exercise its discretionary authority under Oregon's Uniform Certification of Questions of Law Act to accept and decide these questions.  *See* Or. Rev. Stat. §§ 28.200 to .255.  Our phrasing of the questions should not restrict the Court's consideration of the issues involved.  We acknowledge that "[t]he [C]ourt may reformulate the relevant state law questions as it perceives them to be, in light of the contentions of the parties," *Toner ex rel. Toner v. Lederle*

*Labs.*, 779 F.2d 1429, 1433 (9th Cir. 1986), and "[w]e agree to abide by the decision of the Oregon Supreme Court," *Doyle*, 565 F.3d at 544. If the Court determines that the questions presented in this case are inappropriate for certification, or if it declines the certification for any other reason, we will resolve the questions according to our best understanding of Oregon law.

The Clerk will file a certified copy of our Order with the Oregon Supreme Court under Oregon Revised Statutes § 28.215. This appeal is withdrawn from submission and will be submitted following receipt of the Oregon Supreme Court's Opinion on the questions certified. The Clerk is directed to administratively close this docket, pending further order. We retain jurisdiction over any further proceedings in this court. The parties will notify the Clerk within one week after the Oregon Supreme Court accepts or rejects certification, and again within one week after the Court renders its Opinion.

IT IS SO ORDERED.

_____

Alex Kozinski, Circuit Judge