On certified question from the United States Court of Appeals for the Ninth Circuit, certification order dated May 4, certification accepted June 4, argued and submitted September 30, 2009, certified question answered February 4, 2010

Ronald DOYLE;
Robert Deuel;
Benedict Miller;
and Charles Steinberg,
*Plaintiffs,*

*v.*

CITY OF MEDFORD,
an Oregon municipal corporation;
and Michael Dyal,
City Manager, City of Medford,
in his official capacity
and as an individual,
*Defendants.*

(USDC CV-06-03058-PA; USCA 07-35753; SC S057330)

227 P3d 683

Stephen L. Brischetto, Portland, argued the cause and filed the brief for plaintiffs. With him on the brief was George P. Fisher.

Robert E. Franz, Jr., Springfield, argued the cause and filed the brief for defendants.

Anil S. Karia and Michael J. Tedesco, Lake Oswego, filed a brief for *amicus curiae* International Brotherhood of Teamsters Local 223.

BALMER, J.

**BALMER, J.**

This case is before the court on a certified question of Oregon law from the United States Court of Appeals for the Ninth Circuit. *See Doyle v. City of Medford*, 565 F3d 536 (9th Cir 2009) (certifying question); ORS 28.200 - 28.255 (granting authority to answer certified questions and describing procedure). Plaintiffs are retired employees of the City of Medford (the city) who brought an action against the city in federal district court, seeking damages and other relief for the city's actions with respect to making health care insurance coverage available to them. Plaintiffs argued that ORS 243.303(2), which provides that local governments "shall, insofar as and to the extent possible," make the same health care insurance coverage available to retired employees as they make available to current employees, creates a property interest. They claimed that the city deprived them of that property interest without due process of law when it failed to make available to them the same health insurance coverage that it makes available to current employees.

The district court granted summary judgment for the city, concluding that ORS 243.303(2) did not create a property interest. Plaintiffs appealed, and, in the process of considering that appeal, the Ninth Circuit certified to this court, and we accepted, the following question:

> "What amount of discretion does [ORS] 243.303 confer on local governments to determine whether or not to provide health insurance coverage to their employees after retirement?"

For the reasons that follow, we conclude that ORS 243.303(2) creates an obligation for local governments to make health insurance coverage available for retirees; however, we also conclude that the obligation is limited to making coverage available "insofar as and to the extent possible," and that, depending on the circumstances, the local government may be excused entirely from its obligation if it can demonstrate that it was not possible, under the statutory standard, to make coverage available.

We take the facts from the Ninth Circuit's order certifying the question to this court and from the record. Before

1990, the city permitted all employees to elect to continue their health insurance coverage upon retirement. In 1990, the city negotiated with the police officers' union for a health insurance program administered by the Oregon Teamsters Employers Trust (OTET). The contract between the city and OTET provides that retired city employees are not allowed to participate in the Trust's Retiree Plan. OTET was nonetheless "willing" to provide health insurance coverage to retired Teamsters members if the active members of the Teamsters voted for such coverage. The members of the Teamsters have not voted to provide health insurance coverage to retirees. In 2001, the city placed all existing management-level employees under the OTET health insurance program. Because the retired management-level employees were not and could not be members of the Teamsters, OTET would not provide coverage to them.[1]

As noted, plaintiffs are retired city employees—two plaintiffs are retired police officers; two plaintiffs are retired management employees—all of whom were denied the opportunity to purchase OTET health insurance coverage at some point after retirement. Plaintiffs were, however, eligible for certain other insurance coverage after retirement. Specifically, under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), they were eligible to maintain their OTET coverage for 18 months after retirement, and, after that 18-month period expired, they were permitted to enroll in Oregon's Public Employees Retirement System Health Insurance Program, which is paid for in part by contributions from employers (including the city) and in part by premiums and other costs paid by participants (such as plaintiffs, were they to participate).

---

[1] The Ninth Circuit order does not distinguish between the retired police officers and the retired management employees in discussing the availability of retirement benefits. The court stated that, *"[a]ccording to the [c]ity*, the Teamsters were 'willing' to provide health insurance benefits to retired employees, but only 'if the members of the Teamsters voted for such coverage.' " *Doyle v. City of Medford*, 565 F3d 536, 539 (9th Cir 2009) (emphasis added). The city, however, states that the Teamsters were "willing" to provide benefits upon membership approval *only* to retired Teamsters, such as the retired police officers, and not to retired management employees. It is unnecessary for us to resolve that factual issue to answer the certified question.

In 2006, plaintiffs filed an action against the city in federal district court, alleging that the city, in failing to make health insurance coverage available to them, had violated the Age Discrimination in Employment Act of 1967 (ADEA); Oregon's age discrimination statute, ORS 659A.030; ORS 243.303, which we describe below; a 1986 city ordinance implementing ORS 243.303; and the Due Process Clause of the Fourteenth Amendment. The district court granted summary judgment for the city on all federal claims, denied a discovery motion that plaintiffs had filed, and declined to exercise supplemental jurisdiction over the remaining state law claims. As to the due process claim (the claim now at issue), the court held that neither ORS 243.303 nor the city's resolution adopted pursuant to it granted plaintiffs a constitutionally protected property interest. The court determined that, because the statute required continued coverage only "to the extent possible," the statute did not "sufficiently limit the conditions under which the [c]ity would be required to extend health insurance coverage to retirees" to create such a property interest.

Plaintiffs appealed the federal district court's decision to the Ninth Circuit Court of Appeals.[2] The Ninth Circuit noted that resolution of plaintiffs' due process claim—that ORS 243.303 creates a property interest in health insurance coverage after retirement and that the city deprived them of that interest without due process of law—requires interpretation of ORS 243.303 as a matter of state law.[3] *Doyle*, 565 F3d at 540-41 (citing *Board of Regents v. Roth*, 408 US 564, 577, 92 S Ct 2701, 33 L Ed 2d 548 (1972) (property interests

---

[2] Plaintiffs also filed an action in Oregon state court asserting their state law claims, including a claim that the city had violated ORS 243.303. In that action, the state trial court concluded that two plaintiffs were barred from asserting their claims by the statute of limitations but denied the city's motion for summary judgment as to the other two plaintiffs. The court rejected the city's argument that making continuing coverage available to retirees was not "possible" because of the city's contract with OTET. Because the city had not provided evidence that *no* health insurance provider was willing to provide coverage for both active and retired city employees, the trial court refused to hold that it was impossible for the city to make coverage available. As of the date of the Ninth Circuit's order certifying the present question to us, the Oregon case was still pending in the state trial court.

[3] In a separate decision, the court reversed the denial of discovery on the ADEA claim and remanded that claim to the district court.

are created not by constitution, but by independent source, such as state law)). The Ninth Circuit explained that "[p]inpointing how much discretion" ORS 243.303 confers on local governments is "central" to determining whether that statute creates a property interest. *Doyle*, 565 F3d at 542 (citing *Allen v. City of Beverly Hills*, 911 F2d 367, 370 (9th Cir 1990)).

The Ninth Circuit then examined the text, context, and legislative history of ORS 243.303 and concluded that the statute was ambiguous as to how much discretion it affords to local governments in determining whether to make retiree health insurance coverage available. *Doyle*, 565 F3d at 541-42. Because the court believed that resolution of that state law question would be essential to resolution of the due process issue, it certified to this court the question that is now before us. As noted, that certified question asks what amount of discretion ORS 243.303 provides to local governments in determining whether to make health insurance coverage available to retirees. *Id.* at 544. This court accepted the certified question.

ORS 243.303(2) provides:

"The governing body of any local government that contracts for or otherwise makes available health care insurance coverage for officers and employees of the local government *shall, insofar as and to the extent possible,* make that coverage available for any retired employee of the local government who elects within 60 days after the effective date of retirement to participate in that coverage and, at the option of the retired employee, for the spouse of the retired employee and any unmarried children under 18 years of age. The health care insurance coverage shall be made available for a retired employee until the retired employee becomes eligible for federal Medicare coverage, for the spouse of a retired employee until the spouse becomes eligible for federal Medicare coverage and for a child until the child arrives at majority, and may, but need not, be made available thereafter. The governing body may prescribe reasonable terms and conditions of eligibility and coverage, not inconsistent with this section, for making the health care insurance coverage available. The local government may pay none of the cost of making that coverage available

or may agree, by collective bargaining agreement or otherwise, to pay part or all of that cost."

(Emphasis added.) The certified question focuses on the meaning of the phrase "shall, insofar as and to the extent possible" in that statute.

Plaintiffs argue that, because the legislature used the word "shall," the statute imposes a mandatory duty on local governments to make health insurance coverage available to retirees. They argue that local governments may escape that duty only in the case of actual impossibility. Plaintiffs argue that, "if there are providers available who are willing to provide [health insurance] coverage that includes retirees," the city must provide that coverage, regardless of cost or other circumstances.[4] The city takes the contrary position, arguing that the statute imposes no duty at all. In the city's view, because the legislature qualified the word "shall" with the phrase "insofar as and to the extent possible," ORS 243.303(2) is "a permissive statute leaving total discretion to [local governments]." That is, the city contends that the statute, when properly read, merely provides authorization to make health insurance coverage available to retirees, rather than mandating that coverage. As we discuss below, we reject both of those interpretations of ORS 243.303(2). The proper interpretation lies between the parties' positions, and whether a local government has met its obligation under the statute will depend on the circumstances of each case and cannot be determined in the abstract.

We begin with the text of the statute. Ordinarily, use of the word "shall" implies that the legislature intended to create an obligation; in contrast, "may" generally implies that the legislature intended to create only the authority to

---

[4] Plaintiffs also urge us to reformulate the certified question and advise the Ninth Circuit that ORS 243.303(2) creates an "entitlement" and "vested rights" for retirees. That request, however, would have us answer the *federal* question presented in this case and affirmatively state that ORS 243.303(2) creates a property interest for purposes of the Due Process Clause. We decline to do so and instead answer only the *state* law question before us—whether and to what extent ORS 243.303(2) imposes an obligation on local governments to make health insurance coverage available to retirees. What that answer means in terms of the federal question will then be a matter for the Ninth Circuit to decide.

act. *Friends of Columbia Gorge v. Columbia River (S055915)*, 346 Or 415, 426-27, 212 P3d 1243 (2009); *see also Webster's Third New Int'l Dictionary* 2085 (unabridged ed 2002) (defining "shall," in part, as "used in laws, regulations, or directives to express what is mandatory"); Legislative Administration Committee, *Form and Style Manual for Legislative Measures* 6 (2008) ("To impose an obligation to act, use 'shall.' "). There can be, of course, situations in which the context demonstrates that, although the legislature used the word "shall," it intended to create a permissive statute. *See Stanley, Adm. v. Mueller*, 211 Or 198, 208, 315 P2d 125 (1957) ("[T]here are numerous instances in which 'shall' in a statute is interpreted as 'may' * * *."). Here, however, as we describe below, the context demonstrates that the legislature intended "shall" to retain its ordinary meaning. We therefore agree with plaintiffs that ORS 243.303(2) creates *some* obligation for local governments and is not merely an authorization to make coverage available for retirees; contrary to the city's view, the statute does not give the city the discretion simply to decline to make coverage available. The more difficult question is, when and under what circumstances may a local government decide not to make the same coverage available to retirees that it makes available to current employees (or not to make any coverage available to retirees).

ORS 243.303 was originally enacted in 1981 and provided that local governments "may, insofar as and to the extent possible," make health insurance coverage available to certain retired employees. Or Laws 1981, ch 240, § 1. The parties agree that critical changes were made to the statute in 1985, when the legislature amended several provisions of ORS 243.303(2). The 1985 amendment provided as follows:

> "The governing body of any local government that contracts for or otherwise makes available health care insurance coverage for officers and employes of the local government [*may*] **shall**, insofar as and to the extent possible, make that coverage available for [*retired officers and employes of the local government and for spouses and unmarried children under 18 years of age of those retired officers and employes.*] **any retired employe of the local government who elects within 60 days after the effective date of retirement to participate in that coverage and, at the option of the retired employe, for the**

**spouse of the retired employe and any unmarried children under 18 years of age. The health care insurance coverage shall be made available for a retired employe until the retired employe becomes eligible for federal Medicare coverage, for the spouse of a retired employe until the spouse becomes eligible for federal Medicare coverage and for a child until the child arrives at majority, and may, but need not, be made available thereafter.** The governing body may prescribe reasonable terms and conditions of eligibility and coverage, not inconsistent with this section, for making [*that*] **the health care insurance** coverage available. The local government may [*agree* to] pay none[, *part or all*] of the cost of making that coverage available **or may agree, by collective bargaining agreement or otherwise, to pay part or all of that cost.**"

Or Laws 1985, ch 224, § 1 (new text in **boldface**; deleted text in [*bracketed italics*]).

With that amendment, the legislature made two significant changes to the statute. First, and most obviously, the legislature replaced the word "may," which ordinarily connotes authority or discretion, with the word "shall," which ordinarily connotes obligation. The city argues that, notwithstanding the substitution of "shall" for "may," the legislature intended to completely eliminate the mandatory nature of the word "shall" by retaining the phrase "insofar as and to the extent possible." However, we cannot ignore the fact that the legislature changed the wording from the permissive "may" to the mandatory "shall"; the legislature intended to accomplish something with that amendment, namely, changing the mere grant of authority to an obligation of some kind on local governments.

Second, the legislature added a provision providing a time period within which health insurance coverage must be made available. That is, the 1985 amendment provided that health insurance coverage "shall be made available" for retirees *until they become eligible for Medicare*; after that point health insurance coverage "may, but need not," be made available. The legislature thus contrasted the mandatory word "shall" (before Medicare eligibility) with the permissive

word "may" (after Medicare eligibility). That provision demonstrates that the legislature appreciated the difference between the two terms and that it intended to create some kind of obligation for local governments—that they make health insurance coverage available to retired employees—but that the obligation lasts only until the retired employees become eligible for Medicare. *See Friends of Columbia Gorge*, 346 Or at 426 (when "shall" and "may" appear side by side, "shall" creates duty and "may" creates only authority).

The foregoing statutory text and context demonstrate that, by using the word "shall," the legislature intended ORS 243.303(2) to impose an obligation on local governments. The city's argument that it has complete discretion to choose whether to make health insurance coverage available to retirees is simply inconsistent with the text of that statute. However, the legislature also modified that mandatory wording with the phrase "insofar as and to the extent possible." We now turn to a discussion of that phrase to determine how it influences our interpretation of the statute.

We begin, again, with the text of the statute. Plaintiffs contend that the plain, natural, and ordinary meaning of "possible" is "capable of happening," so that the phrase "insofar as and to the extent possible" creates a narrow exception for only actual impossibility. *See Webster's* at 1771 ("possible" means "falling within the bounds of what may be done, occur, be conceived, or be attained within the framework of nature, custom, or manners"). They therefore argue that it is "possible" for a local government to make health insurance coverage available to retirees as long as there is an insurance provider that is willing to provide such coverage, regardless of increased cost to the local government or reduction in the local government's services.

The statutory wording is not as limited as plaintiffs suggest. The phrase "insofar as and to the extent possible" is also used in common parlance to excuse performance of an obligation if, under the circumstances, performance would be unreasonably burdensome, even if it is not factually impossible. *See id.* (defining "possible" as "being within or up to the limits of one's ability or capacity as determined by nature,

authority, *circumstances*, or other controlling factor" (emphasis added)); *Eck v. Market Basket*, 264 Or 400, 405, 505 P2d 1156 (1973) (stating that, "insofar as possible," trial court should avoid interlineations and deletions in written jury instructions but acknowledging that it may not be possible due to the unavailability of "time and stenographic assistance").

Plaintiffs' argument that the word "possible" should be interpreted to mean "capable of happening" also ignores other words in the statute. The legislature did not use the word "possible" by itself; ORS 243.303(2) does not require that health insurance coverage be made available to retirees "unless it is not possible" to do so, nor did the legislature provide that coverage must be made available "if possible." Rather, the legislature modified the condition that providing coverage must be "possible" with the additional words "insofar as and to the extent." "Insofar as" means "in such measure as : to such extent or degree as." *Webster's* at 1170. And "extent," as used in this context, is defined as "the point or degree to which something extends." *Id.* at 805. Both of those phrases emphasize the concept of degree or amount, indicating that the legislature did not view the health insurance coverage obligation as one that necessarily was either "possible" or "not possible"—as plaintiffs suggest—but rather as one that might be possible only to some degree or to some extent. The statute recognizes that local governments face varying circumstances, and it gives local governments some flexibility in complying with the statute, based on those circumstances.

That interpretation of ORS 243.303(2) is consistent with the way the legislature has modified the word "shall" with the phrase "to the extent possible" or the phrase "insofar as possible" in other statutes. Ordinarily, the legislature appears to have used those phrases to articulate a specific legislative policy, rather than imposing an actual impossibility exception. For example, in chapter 185, the legislature has created several commissions to advise the Governor and the legislature. For each commission, the legislature provides, "To the extent possible, members appointed by the Governor shall provide for representation from all areas of the state." ORS 185.320(1) (Commission on Hispanic Affairs);

ORS 185.420(1) (Commission on Black Affairs); ORS 185.520(1) (Commission for Women); ORS 185.610(1) (Commission on Asian Affairs); *see also* ORS 672.615(2) ("Insofar as possible the [State Board of Geologist Examiners] shall be composed of members having diverse geological specialties including at least one engineering geologist."). Our review of those and other statutes[5] in which the legislature has used the phrases "insofar as possible" and "to the extent possible" supports our conclusion that the legislature intended to impose an obligation, but also to provide some flexibility to local governments, when it used the phrase "insofar as and to the extent possible" in ORS 243.303(2).

Other aspects of the statutory context support that view. When the legislature in 1985 changed ORS 243.303(2) from an authorization to make health insurance coverage available to an obligation to do so "insofar as and to the extent possible," it nevertheless retained (with one slight modification) the sentence in that statute providing that "[t]he governing body may prescribe reasonable terms and conditions of eligibility and coverage not inconsistent with this section, for making the health care insurance coverage available." The statute thus recognizes that it may not be possible for a local government to make the same coverage available to retirees that it makes available to current employees, but that, in that event, "insofar as and to the extent" that it is possible to make *some* coverage available to retirees, in light of all the circumstances, it is obligated to do so. Moreover, the statute explicitly provides that the local government "may pay none of the cost of making that coverage available [to retirees] or may agree, by collective bargaining agreement or otherwise, to pay part or all of that cost." Those provisions demonstrate that the legislature intended that, if it is not possible for a local government to make available to retirees the same health insurance coverage that it

---

[5] *See, e.g.,* ORS 144.515 ("To the extent possible, the Department of Corrections shall cooperate with employers in making possible the continued employment of persons released [from confinement after participating in a work release program]."); ORS 802.270(3) ("A computer system designed for the purposes [of maintaining computerized records of insurance information with the Department of Transportation] shall, to the extent possible, enable insurers to transfer information directly to the computer in a way that is most convenient for the insurers and the department.").

makes available to current employees, the government has flexibility in implementing the obligation that the legislature has imposed.[6]

The foregoing text and context analysis supports the conclusion that, under ORS 243.303(2), local governments have an obligation to make health insurance coverage available to retirees, but that there may be factual circumstances that excuse that obligation.

To the extent that any uncertainty remains in interpreting ORS 243.303(2), the legislative history further supports the interpretation set out above. *See State v. Gaines*, 346 Or 160, 172, 206 P3d 1042 (2009) (court may consider legislative history proffered by the parties, if useful). In 1985, the legislature amended ORS 243.303(2) with House Bill (HB) 2430 (1985). As noted, among other amendments, the legislature changed the relevant phrase from "may, insofar as and to the extent possible," to "shall, insofar as and to the extent possible." Or Laws 1985, ch 224, § 1. We therefore look to the legislative history of that bill for further guidance.

There is little specific discussion in the legislative history of the phrase "insofar as and to the extent possible."[7]

---

[6] The legislature also has imposed limits—although they have differed at different times—on the ways in which a local government could meet its obligation. In 2001, the legislature amended ORS 243.303 by adding a provision that prohibited local governments and insurers from creating separate retiree "groups" and from establishing higher premiums for retirees than for current employees. Or Laws 2001, ch 604, § 1, *codified at former* ORS 243.303(3) (2001). In 2003, however, the legislature amended ORS 243.303(3), modifying the prohibition on creating separate groups and eliminating the prohibition on higher premiums for retirees. Or Laws 2003, ch 62, § 1; Or Laws 2003, ch 694, § 1. ORS 243.303(3), however, does not assist us in interpreting ORS 243.303(2), which took its present form more than 15 years earlier. *See State v. Tate*, 347 Or 318, 328, 220 P3d 1176 (2009) (later-enacted statute ordinarily provides little interpretive assistance).

[7] At one point during the public hearings before the House Intergovernmental Affairs Committee, Representative Cease questioned a witness, Don Satchell of the Oregon Education Association, regarding the term:

Rep. Cease: "What's your understanding of the phrase 'insofar as and to the extent possible'? What does that mean?"

Satchell: "That is the current law, and I cannot explain it."

Rep. Cease: "Whatever it means in the current law, it would mean the same here, then?"

Satchell: "That's right."

Tape Recording, House Intergovernmental Affairs Committee, HB 2430, Mar 26, 1985, Tape 97 (statement of Don Satchell).

However, two propositions can be gleaned from the legislative history overall. First, it appears that the legislators understood that the bill would impose some sort of obligation on local governments. As discussed above, that much is clear from the text and context of the statute. Second, the legislators emphasized, particularly when questioning witnesses who were opposed to the bill, that the bill provided local governments flexibility in carrying out their obligations.

Two specific discussions in the legislative history illustrate the foregoing conclusions. First, during a work session on the bill, Legislative Counsel Bob Lundy referred to the phrase "insofar as and to the extent possible." In attempting to determine whether the bill would require local governments to make identical coverage available to retirees and current employees, Chairperson Hill requested Lundy's help. He first sought Lundy's interpretation of the provision in the bill that permitted local governments to "prescribe reasonable terms and conditions of eligibility and coverage" for retiree health insurance coverage. The following exchange ensued:

> Lundy: "[T]he original reason for the terminology that the * * * governing body may provide reasonable terms and conditions of eligibility and coverage was * * * to provide some flexibility to the local governments in trying to fit the retired people into the coverage that is made available for the working employees of the local government. * * * It is deliberately general."

> Chairperson Hill: "Your [premise] then, in summary, would be to provide flexibility?"

> Lundy: "Yes."

> "* * * * *"

> Chairperson Hill: "Mr. Lundy, could you also speak to 'that coverage'? We have * * * terms here that say the local government 'shall insofar and to the extent possible'—which sounds again like qualifying language, and that's excepting language—'make that coverage available.' Would you * * * agree * * * that the coverage must be identical or that the coverage must be comparable?"

> Lundy: "It contemplates with [the] flexible terminology—not only down below but that insofar and to the extent

possible—it contemplates that the insurance plan provided for the working employees would be the plan that covers the retired employee, subject to whatever conditions they have to work out with the insurer on it, for example * * *."

Tape Recording, House Intergovernmental Affairs Committee, HB 2430, Mar 26, 1985, Tape 97 (statement of Bob Lundy) (emphasis added).

That exchange helps demonstrate that the legislature intended to provide flexibility to local governments throughout the bill and, in particular, by retaining the phrase "insofar as and to the extent possible." Lundy specifically pointed to the fact that insurance companies might impose conditions on retiree coverage and noted that the bill was intended to require local governments to work with insurance companies to try to make health insurance coverage available, although perhaps not coverage identical to that of the active employees.

Second, Senator Cohen's comments while presenting the bill on the Senate floor reinforce the interpretation suggested above. After describing the bill in terms of creating a requirement for local governments, Senator Cohen qualified her statements:

"I want to remind you, on line 14, it does say 'insofar as and to the extent possible make the coverage available' * * * so that it does provide that * * * they may offer different packages for * * * them to * * * pay for * * * as they go along so * * * it doesn't say that it shall be in fact the very very same, it says * * * you have to be provided that option within the group system. And also that the governing body may prescribe reasonable terms and conditions of eligibility and coverage. The local government may pay none or part of the costs of making the coverage available."

Senator Cohen emphasized with those comments to the Senate that the bill was intended to be flexible. Tape Recording, Senate Floor Proceedings, HB 2430, May 22, 1985, Tape 124B (statement of Sen Cohen).

Although most of the comments discussed above were made in the context of whether ORS 243.303 required local governments to make available the same *terms* of health insurance coverage for retired employees and active employees, both Lundy and Senator Cohen discussed the

meaning of the phrase "insofar as and to the extent possible" generally. That phrase modifies the local government's obligation to make health insurance coverage available to retired employees, as well as the particular terms of coverage. We therefore find the legislative history useful in confirming that the phrase "insofar as and to the extent possible" was intended to create flexibility within the statute as a whole. The statutory text and context demonstrate that the legislature intended the bill to impose an obligation on local governments, but the text, context, and legislative history also make it clear that the bill was not intended to be unduly burdensome.

■ Based on the foregoing, we interpret ORS 243.303(2) to create an obligation on local governments to make the health insurance coverage that they provide to active employees available to retired employees. It does not, as the city argues, leave the city with "total discretion" to decline to make coverage available to retirees or to choose health insurance coverage for its current employees without regard to whether the insurer is willing to offer coverage to retirees. Neither, however, do we interpret the statute as imposing an absolute mandate, subject only to an exception for actual impossibility. Local governments exist to provide government services, and they have statutory and contractual obligations to employees, retirees, and the citizens within their jurisdictions. Whether a local government has complied with ORS 243.303(2) will depend on whether it has made health insurance coverage available to retirees "insofar as and to the extent possible," in light of all the facts. The responsibility to demonstrate that it was not possible, under the statutory standard, to make coverage available to retirees rests with the local government, and we emphasize that the local government cannot make that showing, as the city attempts to here, by pointing solely to the fact that its chosen provider does not offer retiree health insurance coverage. Although the statutory standard is a legal one, determining whether a local government has demonstrated that it should be excused from making health insurance coverage available to retirees will depend on the facts of each case.

The certified question asks what "amount of discretion" ORS 243.303(2) confers on local governments. As the discussion above demonstrates, we reject the city's position

that the statute delegates to the city discretion to make health insurance coverage available to retired employees; we likewise reject plaintiffs' position that the obligation is absolute, and can be excused only if making coverage available is not "capable of happening." The answer, instead, lies somewhere in between. We also find unhelpful the parties' efforts to reformulate the legal standard established by the statute. The statute requires a local government to make the coverage available "insofar as and to the extent possible." That is the standard that the local government must meet to be excused from the obligation imposed by ORS 243.303(2). Whether a local government has met that standard cannot be answered in the abstract and will depend on the facts.

The certified question is answered.