Argued and submitted February 11, affirmed October 7, 2020, petition for review denied March 18, 2021 (367 Or 709)

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

DANA CHRISTINE ZOOK,
*Defendant-Respondent.*

Clackamas County Circuit Court
17CR25725; A169897

476 P3d 508

The state appeals from an order dismissing a charge that defendant had committed the offense of driving under the influence of intoxicants (DUII). The state assigns error to the trial court's extension of defendant's diversion agreement upon finding that her initial efforts were in "good faith" and to the dismissal of the charge. Invoking ORS 813.225(4) and ORS 813.255(3), the state contends that the trial court lacked discretion to do so where defendant violated her diversion agreement by consuming alcohol. *Held*: Reading ORS 813.225 and ORS 813.255 together, the trial court may grant an extension of a diversion agreement, despite defendant's violation of an alcohol condition, when the court finds that defendant made a good faith effort to complete the conditions of the diversion agreement and that the defendant can complete the conditions of the agreement within the extended diversion period. Accordingly, the trial court did not err in terminating the agreement and dismissing the DUII charge pursuant to ORS 813.225(8)(a).

Affirmed.

Douglas V. Van Dyk, Judge.

Rolf Moan, Assistant Attorney General, argued the cause for appellant. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Andy Simrin waived appearance for respondent.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeVORE, P. J.

Affirmed.

Mooney, J., dissenting.

**DeVORE, P. J.**

The state appeals from an order dismissing a charge that defendant had committed the offense of driving under the influence of intoxicants. The trial court dismissed the charge upon finding that defendant had successfully completed treatment under a diversion agreement. Defendant had done so after the court had extended the diversion agreement upon findings that her initial efforts were in "good faith," that she had violated the agreement by consuming alcohol, and that she still could complete the conditions of the diversion agreement within the extended diversion period. The state assigns error to the court's extension of the agreement and to the dismissal of the charge, contending that the trial court had no discretion but to act on defendant's guilty plea and enter a judgment of conviction.

For the reasons that follow, we determine that the trial court had a choice, when finding defendant in violation but having acted in "good faith" to complete the diversion agreement, either to revoke or extend the diversion agreement to allow defendant the opportunity to complete it. Accordingly, we conclude that, after defendant's successful completion of the extended diversion agreement, the trial court did not err in dismissing the charge. We affirm the order of dismissal.

The relevant facts are procedural and uncontested. In March 2017, defendant drove with a blood alcohol content (BAC) exceeding 0.08 percent. The state charged her with driving under the influence of intoxicants (DUII), ORS 813.010. Defendant pleaded guilty to the offense, and she petitioned to enter into a one-year DUII diversion agreement. The court accepted the guilty plea and entered an order withholding entry of a judgment of conviction pending completion or termination of the diversion agreement.

The order and diversion agreement required that defendant use an ignition interlock device, participate in a victim-impact panel, complete a recommended treatment program, pay required fees, and "comply with all terms in the Petition and Agreement." The diversion agreement required, among other things, that, during the term of

diversion, defendant not use any alcohol or other intoxi-cant.[1] The agreement warned that "the court will terminate the diversion agreement if at any time during the diversion period the court finds that [defendant] failed to fulfill all of the terms of the agreement." It added that, "[i]f the court terminates [defendant's] diversion agreement or [defendant] fail[s] to fulfill the terms of the agreement by the end of the diversion period, the court will sentence [defendant] without a trial."

In early 2018, data from the company that moni-tored defendant's ignition interlock device revealed that four breath tests over two months indicated she had BAC readings ranging from 0.022 percent to 0.039 percent. Upon receiving a letter from the company, the trial court entered an order to defendant to show cause as to why it should not terminate the diversion due to her failure to comply with the requirement to abstain from the use of alcohol.

At the show cause hearing, defendant stipulated that she was "in violation of the terms of the diversion pro-gram." Through counsel, she reported that she had paid her fines and fees, attended the victim-impact program, and completed alcohol treatment. She advised that she had remained sober for a six-month period with no nega-tive reports but admitted that, after emotional challenges, including the death of her grandmother, she "drank on a couple of occasions." She admitted that she "knows she wasn't supposed to" and insisted that she is committed to sobriety and "moving forward regardless of whether she's on diversion or not." Asking the court to "continue her on strict compliance," defendant urged the court to extend the diver-sion agreement.

The state responded that the court only had author-ity under ORS 813.225 to grant an extension if defendant could complete the conditions of the diversion agreement, and, because defendant had already failed to do so, ORS 813.255 required the court to revoke diversion, enter the guilty plea, and impose a judgment of conviction.[2]

---

[1] The diversion agreement incorporated another document, "Explanation of Rights and DUII Diversion Agreement," which outlined those terms.

[2] We review those statutes below.

The trial court determined that it would allow defendant to continue the diversion program. The court cautioned defendant, "So from this point forward, it is strict compliance and you'll have to restart your alcohol treatment. You have to go back to the beginning." The court added:

> "The risks here that are created by this crime are so great, the suffering is indescribable, the suffering that attaches to it sometimes when someone's injured, it's on you to, you know, show you're not a risk. *** Depression and the like, get help for it, but don't expect that the community's going to relax its approach to this particular crime. It's not. We're not."

That day, defendant filed a written motion and declaration for an extension, in which she attested that she had made a good faith effort to complete the conditions of the diversion agreement, including payment of fees, attendance at a victim's impact panel, and completion of treatment, and she admitted her failure to achieve "complete sobriety." She sought a six-month extension. In one order recording the results of the hearing, the court found a violation of the diversion agreement but permitted defendant to continue diversion by "restart[ing] [her] alcohol treatment" and observing "strict compliance." In a form order, the court determined that defendant had made "a good faith effort to complete the conditions of the diversion agreement" and that she "can *** complete the conditions of the diversion agreement in the requested extended diversion period." A notation on the form order reiterated that defendant must "Restart Treatment."

Defendant had no further violations. At the end of the extended diversion period, she moved to dismiss the DUII charge. The state opposed dismissal, contending that the trial court lacked discretion to dismiss the DUII charge because defendant had consumed alcohol during the original diversion period. The court responded with skepticism, asking the state:

> "Why do you think the legislature allows for an extension of diversion if a person's made a good faith effort? Good faith is about as broad a consideration as is ever delegated to a court."

The state responded that consideration of "good faith" should apply only to payment of fees, restitution, or time to complete a treatment program, but should not apply to the alcohol prohibition itself. The trial court was unpersuaded, indicating that all of the terms were equal requirements of the diversion agreement. The court commented that the state's interpretation seemed to run counter to the public policy goal of rehabilitation expressed, in particular, in ORS 813.220 (reviewed below). The court explained:

> "It seems inconsistent with the notion that a person would be in treatment if treatment did not allow for any possibility of even the slightest relapse. It seems not to recognize that alcohol[ism] is a disease and the cure isn't instantaneous *** [I]t takes time and reinforcement and encouragement and accountability[.]"

After further colloquy, the court indicated:

> "I think that this scheme, in order to make any sense, needs to have—needs to recognize that there's some latitude for a person to engage in treatment and have some latitude for a person to violate requirements of treatment and not necessarily be foreclosed from completing the treatment thereafter."

The court found that defendant had "completed all of the terms of the diversion agreement" despite her use of alcohol during the initial diversion period. The court determined, "[I]t's appropriate to dismiss since she was able to continue in the program in a manner consistent with the rules, including the abstinence requirement." The court entered an order dismissing diversion and the DUII charge.

The state now appeals that order. Reprising its arguments from below, the state argues that the trial court erred by extending the diversion period and dismissing the DUII charge. The state contends that the statutory scheme required the court to enter the guilty plea and judgment of conviction once it had found that defendant had failed to fulfill the terms of the diversion agreement.[3]

This case presents questions of statutory construction. It asks whether ORS 813.225(4) permits a trial court

---

[3] Defendant did not file an answering brief on appeal.

to extend a diversion agreement upon findings of both a violation and yet "good faith" completion of something less than all of the requirements of a diversion agreement, and, after such findings, whether ORS 813.255(3)(b) requires a trial court to revoke the diversion agreement and enter the guilty plea. Those are questions of law that we review for legal error. *State v. Maul*, 205 Or App 14, 18, 132 P3d 665, *rev den*, 341 Or 80 (2006). To construe the statutes, we employ the familiar methodology outlined in *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). We examine the statute's text and context within the statutory scheme. *State v. Walker*, 356 Or 4, 13, 333 P3d 316 (2014) (recognizing text and context of the statute as "the best indications of the legislature's intent").

As relevant here, a person commits the offense of driving while under the influence of intoxicants if the person has 0.08 percent or more by weight of alcohol in the person's blood.[4] ORS 813.010(1)(a). A defendant charged with DUII may petition the court to enter into a diversion agreement. ORS 813.210(1).[5] The trial court will determine whether to allow such a petition considering a number of factors. In part, ORS 813.220 provides:

"In making a determination under this section, the court:

"(1)  Shall consider whether the diversion will be of benefit to the defendant and the community.

"(2)  May take into consideration whether there was an early recognition by the defendant during the proceeding that a course of diagnosis and treatment of problem drinking, alcoholism or drug dependency would be beneficial.

"(3)  May take into consideration whether there is a probability that the defendant will cooperate with the diagnostic assessment and treatment agencies.

---

[4] When offering her guilty plea with her petition for a diversion agreement, defendant admitted that her BAC had been 0.17 percent.

[5] In part, ORS 813.210(1) provides:

"After an accusatory instrument has been filed charging the defendant with the offense of driving while under the influence of intoxicants, a defendant may file with the court a petition for a driving while under the influence of intoxicants diversion agreement described in ORS 813.200."

"(4)   May take into consideration whether the defen-
dant will observe the restrictions contained in the diver-
sion agreement."

Those were the considerations from which the trial court
drew its sense of a rehabilitative purpose in the statutory
scheme.

With exceptions not relevant here, a petition for a
diversion agreement must include "an agreement by the
defendant to not use intoxicants during the diversion period
and to comply fully with the laws of this state designed to
discourage the use of intoxicants." ORS 813.200(4)(d). The
defendant's petition must include an agreement to pay, based
on ability to pay, for a program of treatment, as indicated to
be necessary by a screening interview. ORS 813.200(4)(c).
The defendant must also pay to the court a filing fee of $490
(ORS 813.210(2) (payment requirement); ORS 813.240(1)
(setting $490 fee)), plus $150 to the organization providing
the screening interview (ORS 813.240(3) (setting $150 fee)),
and potentially the cost of any court-appointed attorney fees
(ORS 813.200(4)(i) (court-appointed attorney fees in petition
for diversion agreement); ORS 813.210(4) (attorney fees,
unless waived by the court)).

If the trial court allows the petition, it will accept a
plea of guilty or no contest, but the court will withhold entry
of the judgment of conviction, pending the completion or ter-
mination of the diversion. ORS 813.230(1)(a), (3). "The peti-
tion when signed and dated becomes the diversion agree-
ment between the defendant and the court." ORS 813.230(2).
The diversion agreement operates for a period of one year.
ORS 813.230(3).

After a defendant enters into a diversion agreement,
the court might face a choice whether to extend the duration
of diversion or to terminate the agreement and enter a judg-
ment of conviction. Both possibilities turn on the failure of
a defendant to have satisfied all the terms of a diversion
agreement. To allow an extension, ORS 813.225 requires
two findings. The statute provides, in relevant part:

"(1)   A defendant may apply by motion to the court in
which a driving while under the influence of intoxicants

diversion agreement described in ORS 813.230 was entered for an order extending the diversion period[.]

"* * * * *

"(4) The court may grant a petition for an extension filed under this section if the court finds that *the defendant made a good faith effort to complete the conditions of the diversion agreement* and that *the defendant can complete the conditions of the diversion agreement within the requested extended diversion period*.

"* * * * *

"(8) If the court grants the petition for an extension under this section, the following apply:

"(a) If the defendant fully complies with the conditions of the diversion agreement within the extended diversion period, the court may dismiss the charge with prejudice under ORS 813.250."

(Emphases added.) If, however, the court is unwilling to allow an extension, the diversion agreement ends as the result of the defendant's failure to have satisfied all terms of the agreement. ORS 813.225(9) provides:

"If the court denies the petition for an extension under this section, the court shall enter the guilty plea or no contest plea filed as part of the petition for a diversion agreement, shall enter a judgment of conviction and shall sentence the defendant."

If the court does grant the extension, the extension may be for no more than 180 days from the end of the original diversion period.[6] ORS 813.225(5).

Coincidentally, the statute governing removal of the ignition interlock device, a device required by the diversion agreement, employs essentially the same 180-day time period as the maximum extension of a diversion agreement. In part ORS 813.645(1) provides:

"A defendant may apply by motion to the court in which a driving while under the influence of intoxicants diversion agreement described in ORS 813.230 was entered for an

---

[6] Although not relevant here, a further extension is allowed under conditions involving a defendant in military service. ORS 813.225(7).

order vacating the requirement to install and use an ignition interlock device if the defendant:

"(a) *Has complied* with the condition of the diversion agreement described in ORS 813.602(3) *for at least six consecutive months* and provides a certificate to the court from the ignition interlock device manufacturer's representative stating that the device has not recorded a negative report[.]"

(Emphases added.) The referenced statute, ORS 813.602(3), is the source of the requirement that a person subject to a diversion agreement install an ignition interlock device. A "negative report" includes a report of an attempt to start a vehicle while the person has a BAC higher than 0.02 percent by weight, ORS 813.599(3) and (5), like those that prompted defendant's show cause hearing.

Ultimately, several statutes contemplate the end of the diversion program, allowing for a defendant's success or failure. The defendant may move to terminate the diversion agreement upon its successful conclusion pursuant to ORS 813.250(1), which provides, in part:

"At any time after the conclusion of the period of a driving while under the influence of intoxicants diversion agreement described in ORS 813.230, a defendant who has fully complied with and performed the conditions of the diversion agreement may apply by motion to the court wherein the diversion agreement was entered for an order dismissing the charge with prejudice."

Similarly, the court may, on its own motion may terminate the diversion agreement upon its successful conclusion pursuant to ORS 813.255, which provides, in part:

"(1)   At any time before the court dismisses with prejudice the charge of driving while under the influence of intoxicants, the court on its own motion *** may issue an order requiring the defendant to appear and show cause why the court should not terminate the diversion agreement.

"* * * * *

"(5)   If the defendant appears at the hearing on the order to show cause, the court shall dismiss with prejudice the charge of driving under the influence of intoxicants if:

"(a)   The defendant has complied with and performed all of the conditions of the diversion agreement except that

the defendant owes $500 or less of the fees required under
ORS 813.200, 813.210, 813.235, and 813.240[.]"

To like effect, parallel provisions permit termination of the
diversion and dismissal of the DUII charge upon successful
completion of the diversion program and an immediate cure
of any outstanding fees of $500 or less.[7]

Of particular relevance here, ORS 813.255(3), con-
templates the potential of a defendant's failure to satisfy the
diversion agreement. When a defendant fails to fulfill all
the terms of the diversion agreement, the trial court must
terminate the diversion agreement and enter the guilty plea
as provided by ORS 813.255(3). Omitting cross-references
not relevant here, ORS 813.255(3) provides:

> "[T]he court *shall* terminate the diversion agreement
> and enter the guilty plea or no contest plea that was filed
> as part of the petition for the diversion agreement *** if, at
> the hearing on the order to show cause, the court finds by a
> preponderance of the evidence that:
>
> "*****
>
> "(b)   The defendant failed to fulfill all of the terms of
> the diversion agreement."

(Emphasis added.)

We recognize the appearance of a potential tension
within the statutes—particularly with the state's construc-
tion of the statutes. The state stresses that ORS 813.255(3)
requires that, when the court finds that a defendant failed
to fulfill all of the terms of a diversion agreement, the
court "shall terminate the diversion agreement and enter
the guilty plea."[8] The state, however, fails to reconcile, in a

---

[7] Specifically, ORS 813.252 permits a defendant to move to terminate the
diversion agreement and dismiss the DUII charge upon completion of the diver-
sion agreement, provided that defendant owes no more than $500 in fees and
pays them by the end of the day of the hearing and provided further that a judg-
ment be entered for any restitution still owing. The court may do the same on its
own motion. ORS 813.255(5)(b), (7).

[8] We acknowledge that ORS 813.255(3) uses the word "shall," demonstrating
a duty. "Ordinarily, use of the word 'shall' implies that the legislature intended
to create an obligation," as opposed to "may," which "generally implies that the
legislature intended to create only the authority to act." *Doyle v. City of Medford*,
347 Or 564, 570-71, 227 P3d 683 (2010) (citing *Friends of Columbia Gorge v.*

convincing way, its interpretation of ORS 813.255(3) with ORS 813.225(4), which *also* addresses a defendant's failure to have complied with all terms of a diversion agreement.

By its terms, ORS 813.225(4) contemplates that a defendant might have failed to comply with all of the terms of a diversion agreement and yet provides that the court may allow the defendant more time to bring herself into compliance when the court is able to make two findings. The court must be able to find, first, that "defendant made a good faith effort to complete the conditions of the diversion agreement" and, second, that "the defendant can complete the conditions of the diversion agreement within the requested extended diversion period." The phrase, "good faith effort," expressly recognizes the potential that a defendant has violated some condition of the diversion agreement. Even so, the statute provides the court authority to extend the diversion agreement if the court also finds that defendant can bring herself into compliance "within the requested *extended* diversion period." (Emphasis added.) Therefore, whatever ORS 813.225(4) might mean, its accommodation of incomplete compliance is unavoidably inconsistent with the state's strict view that ORS 813.255(3) means that any failure to fulfill all of the terms of the diversion agreement at any time during the diversion period compels revocation of the agreement and conviction of the DUII charge.[9]

The potential tension between ORS 813.225(4) and ORS 813.255(3), as construed by the state, is not resolved with legislative history. In the trial court, the state offered no help with legislative history. On appeal, the state proffers the inconclusive testimony of two witnesses who made

---

*Columbia River*, 346 Or 415, 426-27, 212 P3d 1243 (2009); *Webster's Third New Int'l Dictionary* 2085 (unabridged ed 2002) (defining "shall," in part, as "used in laws, regulations, or directives to express what is mandatory"); Legislative Administration Committee, *Form and Style Manual for Legislative Measures* 6 (2008) ("To impose an obligation to act, use 'shall.'")).

[9] The dissenting opinion misapprehends the "tension" to which we refer as if it were between "may" versus "shall" in ORS 813.255(1) and (3). The tension to which we refer is between ORS 813.225(4) and ORS 813.255(3). It arises due to the legislature's choice to grant the court authority to accept a good faith effort to complete the conditions of a diversion agreement—*i.e.*, acknowledge a violation— yet allow completion within extension period. That potential tension is resolved, as we shall describe, with emphasis ORS 813.225(8)(a), in the larger framework of the statutes.

comments about legislation in 2011 that deleted the phrase "in conjunction with the defendant's operation of a vehicle" from the prohibition in ORS 813.200(4)(d) against use of alcohol during diversion. Or Laws 2011, ch 468, § 3. The testimony of nonlegislator witnesses is a problematic indication of legislative intent in ordinary circumstances. *See State v. Stamper*, 197 Or App 413, 424-25, 106 P3d 172, *rev den*, 339 Or 230 (2005) ("[W]e are hesitant to ascribe to the Legislative Assembly as a whole the single remark of a single nonlegislator at a committee hearing."); *Suchi v. SAIF*, 238 Or App 48, 55, 241 P3d 1174 (2010), *rev den*, 350 Or 231 (2011) ("[W]e generally are reluctant to place too much weight on a single statement of a single witness in a legislative hearing."). That is especially true where the comments, as here, are ambiguous and do not concern the statutes at issue. They address a revision of a different statute.

The critical statute in this case is ORS 813.225 on extensions of diversion agreements. That statute was enacted earlier as part of Senate Bill (SB) 35 (1997). Or Laws 1997, ch 749, § 7. In its legislative history, we find no testimony that would explain the purpose of ORS 813.225(4). However, for the same reason, we observe that there is no legislative history to diminish the accommodation that ORS 813.225(4) expressly provides for "good faith effort" at compliance with a diversion agreement.

We are not persuaded by the state's argument that a "good faith effort" at complying with a diversion agreement should be read narrowly to encompass only delays in paying fees or completing the VIP or a treatment program. As the trial court noted, the requirements to pay fees, use an ignition interlock device, attend a victim-impact program, and complete a treatment program are *all* conditions of a diversion agreement. *See* ORS 813.210(2) (payment requirement); ORS 813.240(1) (setting $490 fee); ORS 813.240(3) ($150 fee for screening interview); ORS 813.200(4)(i) (agreement to pay court-appointed attorney fees in petition for diversion agreement); ORS 813.210(4) (attorney fees due unless waived by the court); ORS 813.235 (victim impact panel attendance and $5-50 fee); ORS 813.602(3) (use of ignition interlock device). Violation of those terms is no less a violation of a diversion agreement than violation of the alcohol prohibition condition.

Such failures to act or to pay are acts of omission, while the use of alcohol is an act of commission, but the factual distinction between acts of omission and acts of commission is not a legal distinction here. Such failures are all violations of a diversion agreement just the same. *See, e.g.*, *State v. Canales*, 301 Or App 668, 669-70, 458 P3d 720, *rev den*, 366 Or 552 (2020) (failure to attend victim impact panel program within time set by diversion agreement held a violation of diversion agreement). That is especially true because ORS 813.225(4) speaks broadly of the court's authority to find that "the defendant made a good faith effort to complete the conditions of the diversion agreement." The statute does not restrict the conditions that the court may and may not assess in that determination. And, needless to say, we may not insert words into the statute that the legislature did not use. ORS 174.010.

The import of ORS 813.225(4) now becomes apparent. Before a diversion agreement expires, when a defendant recognizes she will be unable to fully comply with all the terms of the diversion agreement, she may seek an extension of the agreement. If the defendant admits a failure to satisfy a condition, she may petition the court to find a "good faith effort" at completing her diversion agreement and to find further that she can complete the conditions of the agreement within the requested extended diversion period. The legislature has given the trial court the authority to accommodate, at that juncture, something less than full compliance, while allowing the defendant to continue the chance to succeed with the diversion agreement. Of course, ORS 813.225(9) also permits the court to reject the defendant's motion for an extension, agree with the state that the alcohol violations were too grave, revoke the diversion agreement, and enter the guilty plea and judgment of conviction. The court's authority embraces both choices. If, however, we were to adopt the state's strict view that a failure to satisfy a condition categorically precludes an extension of the agreement, then we would render ORS 813.225(4) ineffectual or meaningless, which we cannot do. *State v. Cloutier*, 351 Or 68, 98, 261 P3d 1234 (2011) ("[I]f possible, we give a statute with multiple parts a construction that will give effect to all of those parts." (Internal quotation marks omitted.))

Excepting the alcohol use, the state does not otherwise challenge the factual basis of the trial court's findings that defendant had made a good faith effort to complete the terms of her diversion agreement.[10] Defendant had paid her fees, paid her fines, attended the victim's impact panel, and completed her alcohol treatment. Excepting the alcohol use within the initial term of the diversion, the state also does not challenge the finding that defendant could and did complete the conditions of the diversion agreement "within the requested extended diversion period." The trial court required her to restart alcohol treatment, and, by the end of the extended time, the court found that she had completed the terms of diversion. The six-month extension was the same as the six-month period required before she could seek to remove her ignition interlock device. *See* ORS 813.645(1)(a) (six-month use required for persons subject to a diversion agreement before motion to remove device).

Because ORS 813.225(4) permitted defendant to overcome her failure in her first effort, she put herself in a position under ORS 813.225(8)(a) and ORS 813.250 for termination of the diversion and dismissal of the DUII charge. The court "may dismiss the charge with prejudice" if she "fully complies with the conditions of the diversion agreement." ORS 813.225(8)(a). We do recognize, as the state insists, that ORS 813.255(3) provides that "the court shall terminate the diversion agreement and enter a guilty plea *** if *** the court finds *** that *** [t]he defendant failed to fulfill all of the terms of the diversion agreement." However, we are required to construe the statutes together. *Stamper*, 197 Or App at 425 ("[W]e have an obligation to give meaning and effect to all relevant statutes, whenever those statutes were enacted, based on the assumption that the legislature always intends its enactments to be construed together as a workable whole."). Accordingly, when the statutes are read together, we observe that the "diversion agreement" to which ORS 813.255(3)(b) refers has been effectively

---

[10] Aside from its categorical argument, the state also does not otherwise challenge the trial court's determination that defendant had made a "good faith effort" with respect to the requirement that she not use alcohol; in other words, the state does not contend that the court misapplied the "good faith effort" standard as to alcohol use, if the court was authorized to invoke it.

modified by the extension permitted by ORS 813.225(4). Further, the more particular provision of ORS 813.225(8)(a) then provides for dismissal of the agreement and the charge upon compliance with the agreement within the extended diversion period.[11]

Our case law is not to the contrary. The state argues that cases involving a violation of a diversion agreement require strict compliance with the alcohol prohibition condition under ORS 813.255(3). None of our prior cases, however, considered an extension under ORS 813.225(4), and none construed ORS 813.225(4) together with ORS 813.255(3). Our prior cases only dealt with a defendant's failure to comply with conditions of a diversion agreement within the time of the agreement or within the added time of an extension. *See Canales*, 301 Or App 668 (failure to attend victims impact panel within the time of the diversion agreement); *State v. Lopez*, 266 Or App 705, 707, 338 P3d 799 (2014) (failure to pay fee within time of the diversion agreement made before a beneficial statutory change); *State v. Wilson*, 247 Or App 761, 763, 270 P3d 411 (2012) (failure to pay fees timely and failure to seek an extension); *State v. Reed*, 241 Or App 47, 58, 249 P3d 557, *rev den*, 350 Or 574 (2011) (failure to make timely payment); *State v. Rowland*, 234 Or App 494, 500-01, 228 P3d 670 (2010) (failure to comply with financial obligations within extended time); *State v. Vargas-Garcia*, 217 Or App 70, 73, 174 P3d 1046 (2007) (failure to timely pay fees); *State v. Maul*, 205 Or App 14, 18-19, 132 P3d 665, *rev den*, 341 Or 80 (2006) (failure to complete treatment program within extended time).[12] This is a case of first impression.

We conclude that under ORS 813.225(4) the trial court may grant an extension, despite defendant's violation of the alcohol condition, when the court finds that defendant

_____

[11] As a consequence, ORS 813.255(3) is not the only door out of a diversion agreement—a door marked "failure." After an *extension*, ORS 813.225(8)(a) is an alternate door out of a diversion agreement, providing, "If the defendant fully complies with the conditions of the diversion agreement within the *extended* diversion period, the court may dismiss the charge with prejudice under ORS 813.250." (Emphasis added.) Upon success, ORS 813.225(8)(a) permits dismissal.

[12] As noted above, legislative changes in 2013, *see* Or Laws 2013, ch 78, §§ 1, 3, eased conditions related to fees by permitting payment by the end of the day of a hearing on the diversion agreement. ORS 813.252(3); ORS 813.255(5).

made a good faith effort to complete the conditions of the diversion agreement and that the defendant can complete the conditions of the agreement within the extended diversion period. The record here supports the trial court's findings, and the statutes permit the trial court's decisions. Accordingly, the trial court did not err in terminating the agreement and dismissing the DUII charge pursuant to ORS 813.225(8)(a).

Affirmed.

**MOONEY, J.,** dissenting.

Defendant admitted to drunk driving. Specifically, she admitted that her blood-alcohol content had been .17 percent while driving on a public roadway. After pleading guilty to the crime of driving under the influence of intoxicants (DUII), ORS 813.010, she petitioned the court to allow her to enter into a diversion program under ORS 813.200 to 813.270. In her petition, defendant expressly agreed that, "if the court allows this petition," she would *not drink any alcohol* (with strict exceptions for medical and religious purposes) and she would pay certain fees, complete a drug and alcohol assessment, undergo any treatment recommended as a result of that assessment, attend a victim impact panel (VIP) session, install an ignition interlock device (IID) in her car, and keep the court apprised of her current address.

After determining defendant's eligibility for diversion and in consideration of her express promises, the trial court granted the petition and entered an order that withheld entry of judgment of conviction pending completion or termination of diversion. If defendant were to comply with the conditions of diversion, the case would be dismissed. The obvious benefit to defendant would be dismissal of the criminal charge. The less obvious benefit would be the information and insight gained from participation in the diversion program. The benefit to society, stemming from that information and insight, would be a decreased risk of defendant driving impaired and, therefore, an associated decrease in the risk of harm to others. Noncompliance, on the other hand, would result in termination of diversion and entry of a judgment of conviction based upon defendant's guilty plea. Diversion, simply put, is an opportunity. If successful, it is

a win-win: for defendant and for everyone who travels on Oregon's public roadways.

But that is not what happened here. In fact, defendant violated the terms of diversion. She drank alcohol—arguably the core condition of diversion. More importantly, she drank alcohol *and attempted to drive* on at least four occasions. We know that because the IID installed in her car documented those four occasions. But the trial court nevertheless permitted defendant to continue with diversion, extending its duration, and ultimately dismissing the criminal charge against her. My colleagues conclude that it was within the trial court's discretion to proceed as it did in this case. I do not agree, and I offer this dissent to explain why.

A trial court must terminate a diversion agreement and enter the guilty plea held in abeyance during the diversionary period if the defendant does not fulfill the terms of diversion. Specifically, ORS 813.255 provides, in part:

> "(1)  At any time before the court dismisses with prejudice the charge of driving while under the influence of intoxicants, the court on its own motion * * * *may* issue an order requiring the defendant to appear and show cause why the court should not terminate the diversion agreement * * *.
>
> "* * * * *
>
> "(3)  Except as provided in subsections (4), (5) and (6) of this section, the court *shall* terminate the diversion agreement and enter the guilty plea or no contest plea that was filed as part of the petition for the diversion agreement * * * if, at the hearing on the order to show cause, the court finds by a preponderance of the evidence that:
>
> "* * * * *
>
> "(b)  The defendant failed to fulfill all of the terms of the diversion agreement."

(Emphases added.)

In arguing for termination at the show cause hearing set by the trial court after learning of the IID data, the state focused on the word "shall" in subsection (3). It argued

that ORS 813.255 required the court to terminate diversion and enter the guilty plea because defendant violated the diversion agreement. The court disagreed, citing the word "may" in subsection (1), and concluding that it had discretion to continue or terminate diversion.

Whether ORS 813.255(3)(b) imbues the trial court with discretion to choose between (1) overlooking a violation of—and continuing—the agreement and (2) terminating the agreement and proceeding to enter the guilty plea is a question of statutory construction. Employing the familiar methodology outlined in *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009), we first examine the statute's text in context. *State v. Walker*, 356 Or 4, 13, 333 P3d 316 (2014) ("We begin with the text and context of the statute, which are the best indications of the legislature's intent.").

Use of the word "shall" in ORS 813.255(3)(b) demonstrates a duty. "Ordinarily, use of the word 'shall' implies that the legislature intended to create an obligation," as opposed to "may," which "generally implies that the legislature intended to create only the authority to act." *Doyle v. City of Medford*, 347 Or 564, 570-71, 227 P3d 683 (2010) (citing *Friends of Columbia Gorge v. Columbia River*, 346 Or 415, 426-27, 212 P3d 1243 (2009)); *Webster's Third New Int'l Dictionary* 2085 (unabridged ed 2002) (defining "shall," in part, as "used in laws, regulations, or directives to express what is mandatory"); Legislative Administration Committee, *Form and Style Manual for Legislative Measures* 6 (2008) ("To impose an obligation to act, use 'shall.'"). Although the legislature uses "shall" on occasion to create a permissive statute, its use of "shall" alongside the word "may" demonstrates an intention to give "shall" obligatory meaning. *Doyle*, 347 Or at 570 (so concluding); *Friends of Columbia Gorge*, 346 Or at 426 (when "shall" and "may" appear side-by-side, "shall" creates duty, whereas "may" creates only authority). Under such circumstances, "our normal interpretive principles dictate that we presume different meanings are intended" by the two terms. *Id.* at 427.

Said another way, "shall" and "may" are different words. The legislature used both words in the same statute.

We should presume that the legislature used both words on purpose and that it did so intending that the different meanings be applied. The majority dismisses the obvious difference as "potential tension" in the statute, but I do not see it that way. "[M]ay" in ORS 813.255(1) means that the trial court is *permitted* to issue an order for the defendant to appear and show cause why diversion should not be terminated. "[S]hall" in ORS 813.255(3)(b) means that the trial court *must* terminate the diversion agreement and enter the guilty plea if it finds that the defendant violated the agreement. *See Force v. Dept. of Rev.*, 350 Or 179, 188, 350 P3d 179 (2011) ("'[C]ontext' includes, among other things, other parts of the statute at issue."). That the legislature used the word "may" in subsection (1) and "shall" in subsection (3) reflects an appreciation for the difference between the two terms, and an intention to create an *obligation* with respect to the latter. The court may schedule a hearing concerning whether to terminate diversion, but, regardless of whether it conducts a show-cause hearing, it must terminate diversion where it finds a defendant has, in fact, violated the agreement. There is no tension.

The statute's context further supports the conclusion that termination of the diversion agreement and entry of the guilty plea is not merely an option, when a violation is found. In *State v. Canales*, 301 Or App 668, 669, 458 P3d 720, *rev den*, 366 Or 552 (2020), we interpreted ORS 813.255 (3)(b) to require termination and entry of the guilty plea when the court finds a defendant violated a term of the diversion agreement. *See also State v. Bryan*, 221 Or App 455, 459, 190 P3d 470 (2008), *rev den*, 347 Or 290 (2009) ("Prior construction of a statute by this court is always relevant to our analysis of the statute's text."). In *Canales*, the defendant completed all terms of the diversion agreement within the diversion period, except for attendance at a victim impact panel, which he completed one week late. 301 Or App at 669. The trial court terminated diversion and entered a judgment of conviction for DUII. *Id.* The defendant appealed, arguing that ORS 813.255(3)(b) does not require a trial court to terminate the diversion agreement because he violated a term. *Id.* He contended, instead, that the court had discretion to excuse the late completion of the

victim impact panel and to dismiss his case. *Id.* We rejected that argument without written discussion and affirmed. *Id.* at 670.

We have reached a similar conclusion with respect to analogous language in a related statute. In *State v. Maul*, 205 Or App 14, 18-19, 132 P3d 665, *rev den*, 341 Or 80 (2006), we examined *former* ORS 813.225(7)(b) (2006), *renumbered as* ORS 813.225(8)(b), Or Law 2011, ch 197, § 2. In that case, the defendant received an extension to his diversion period. *Id.* at 17. After failing to complete the diversion agreement's requirements within the extended time, he sought a second extension. *Id.* The trial court declined that request, but, rather than enter a conviction, continued the matter to a later date. *Id.* That later date arrived and, again, the defendant had failed to satisfy the terms of diversion, and was denied an extension but permitted a continuance. *Id.* Finally, the defendant successfully completed all of the conditions of his diversion. *Id.* at 18. The court dismissed the DUII charge. *Id.* On appeal, we concluded that the requirement that the court "*shall* enter a judgment of conviction and *shall* sentence the defendant" if it finds that the defendant failed to comply with terms of diversion within the extended diversion period is obligatory. *Id.* at 18 (emphases added). We reversed and remanded for entry of a judgment of conviction. *Id.*

Reviewing related statutory provisions, I find no support for the assertion that ORS 813.255(3)(b) is discretionary. *See State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012) (a statute's context includes "related statutes"). Other sections of ORS chapter 813 grant the trial court authority to allow a petition for diversion (ORS 813.220), to extend the diversion period (ORS 813.225), and to dismiss the DUII charges (ORS 813.250), but they do not provide discretion with regard to the requirements of ORS 813.255(3).

For its part, ORS 813.220 pertains to considerations for allowing diversion in the first place; it does not address the question of whether to continue or terminate diversion already underway. Insofar as those qualifying factors emphasize treatment and rehabilitation and contemplate

behavioral issues associated with addiction—like relapse—they do so for the purpose of determining a person's suitability for *entering* diversion, not for *resuming* it after failing to adhere to its conditions.

ORS 813.225 allows the trial court to grant a petition for an extension of the diversion period upon finding, among other things, that the defendant can complete the conditions of diversion within the additional time requested. It is axiomatic that a defendant cannot "complete the conditions of the diversion agreement" if she has already violated the agreement. If the court finds that the defendant violated the terms of the diversion agreement, and if the record supports that conclusion, the record necessarily cannot also permit the court to find that, with more time, the defendant can meet the conditions of diversion. In effect, the findings that implicate ORS 813.255(3)(b) and ORS 813.225 are mutually exclusive.

There is an important difference between requesting additional time to attend a VIP class because defendant has not yet been able to attend the class and requesting additional time to not drink alcohol when defendant has already violated diversion by drinking alcohol. An extension to attend VIP would allow full compliance. An extension to not drink will never result in full compliance if the defendant has already consumed alcohol. I find it significant that a defendant requesting an extension of time must make that request "[w]ithin 30 days prior to the end of the diversion period." That requirement clearly exists to allow compliance where compliance can still be achieved.

I acknowledge that the trial court's decision to extend the diversionary period and to essentially restart the clock on the "no alcohol" requirement reflects compassion and hope. But, the court's assertion that mandatory termination of diversion is not consistent with an understanding of alcoholism as a disease or with "the public policy goal of rehabilitation" is not correct and it misses the point. ORS 813.010 penalizes drunk driving as criminal conduct. It does not penalize, criminalize, or seek to cure alcoholism. The goal is to reduce drunk driving and the human risks associated with drunk driving. The DUII diversion

statutory framework requires full compliance. I believe it is our job to enforce the law as it is written.

Because the trial court found that defendant violated diversion when she used alcohol, I would conclude that it erred by not terminating her diversion agreement and entering her guilty plea. I would reverse and remand for entry of judgment of conviction and sentencing. I respectfully dissent from the majority's decision to the contrary.